ROBBINSDALE EDUCATION ASSOCIATION AND OTHERS v. ROBBINSDALE FEDERATION OF TEACHERS LOCAL 872 AND ANOTHER.*

239 N. W. 2d 437.

January 23, 1976—No. 46216.

---

* Judgment vacated and case remanded, 429 U. S. 880, 97 S. Ct. 225, 50 L. ed. 2d 160 (1976).

*Peterson, Engberg & Peterson, Roger A. Peterson,* and *William F. Garber,* for appellant.

*Larson, Mannikko & Swenson* and *Darel F. Swenson,* for respondent plaintiffs.

*LeVander, Zimpfer & Tierney* and *Bernard G. Zimpfer,* for respondent school district.

*Gregg M. Corwin, Zwerdling, Maurer, Diggs & Papp,* and *A. L. Zwerdling,* for American Federation of State, County and Municipal Employees, amicus curiae, seeking reversal.

*Peterson, Popovich, Knutson & Flynn, Peter S. Popovich,* and *Richard J. Sands,* for Minnesota School Boards Association, amicus curiae, seeking affirmance.

*Mullin, Swirnoff & Weinberg, William E. Mullin,* and *Edwin Vieira, Jr.,* for The National Right to Work Legal Defense Foundation, amicus curiae, seeking affirmance.

*Lee L. LaBore,* for Robert Hedin, teachers from Hutchinson Vocational School, Jack Borowski, and teachers from Canby Vocational School, amici curiae, seeking affirmance.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly* and *Eric R. Miller,* for Minnesota Education Association, amicus curiae, seeking reversal.

*Peterson, Bell & Converse* and *Roger A. Jensen,* for Minnesota Teamsters Public and Law Enforcement Employees' Union, Local 320, amicus curiae, seeking reversal.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly,* and *Eric R. Miller* and *Stephen M. Nassau,* for National Education Association, amicus curiae, seeking reversal.

MacLaughlin, Justice.

The sole issue on this appeal is whether Minn. St. 179.65, subd. 2, the "fair share" statute, deprives an individual of property

without providing procedural due process. The trial court con-cluded that the statute violated the due process clauses of the Minnesota and United States Constitutions in that "it makes no provision for notice and hearing prior to the determination of the fair share fee for services." We reverse.

The "fair share" statute is a part of the Public Employment Labor Relations Act (PELRA), Minn. St. 179.61 to 179.77. The purpose behind PELRA is to "promote orderly and constructive relationships between all public employers and their employees, subject however, to the paramount right of the citizens of this state to keep inviolate the guarantees for their health, education, safety and welfare." § 179.61. The legislature recognized that "unique approaches to negotiations and resolutions of disputes between public employees and employers are necessary" to ful-fill this purpose. Id. As a result, PELRA provides that any bar-gaining unit of employees may elect by majority vote an employee organization representative who shall then be certified as the "exclusive representative of all employees in the unit." § 179.67, subd. 12. The act contemplates that all employees in a given bargaining unit are entitled to share equally in the bene-fits obtained by the exclusive representative through negotia-tions or grievance proceedings. Consequently, the act provides in § 179.65, subd. 2:

"* * * [A]ll public employees who are not members of the exclusive representative may be required by said representative to contribute a fair share fee for services rendered by the exclu-sive representative, and the employer upon notification by the exclusive representative of such employees shall be obligated to check off said fee from the earnings of the employee and trans-mit the same to the exclusive representative. In no instance shall the required contribution exceed a pro rata share of the specific expenses incurred for services rendered by the representative in relationship to negotiations and administration of grievance procedures."

Appellant, Robbinsdale Federation of Teachers Local 872, is an employee organization whose members are some, but not all, of the employees of Independent School District No. 281. Appellant has been elected the exclusive representative of all employees in the school district belonging to certain bargaining units, whether the employees are members of appellant or not.[1] Respondents Marilyn Threlkeld, a nonprofessional employee of the school district, and Daniel Hanka, a professional employee of the school district, are not members of appellant but are, of course, represented by appellant in bargaining and grievance procedures. Respondent Robbinsdale Education Association is an employee organization which has as its members some of the professional employees of the school district.

In May 1974, appellant voted to require a fair share contribution from all the employees of the school district represented by appellant but who are not members of appellant, such as respondents Threlkeld and Hanka, and many of the members of the Robbinsdale Education Association. Appellant notified the school district of the amount of the fair share fee; and the school district, pursuant to § 179.65, subd. 2, began withholding or checking off from the paychecks of respondents Threlkeld and Hanka, among others, the designated amount of the fair share fee. Appellant informed respondents Robbinsdale Education Association and Hanka prior to the time of the first checkoffs, but did not so inform respondent Threlkeld. At no time were any of the respondents given an opportunity for a hearing by an independent and impartial body regarding their objections to the checkoff from their earnings of fair share contributions or the amount of such checkoffs.

On November 6, 1974, respondents brought this action challenging the validity of § 179.65, subd. 2. An agreement was reached by the parties on December 18, 1974, which provided

---

[1] Minn. St. 179.65, subd. 2, provides that "[p]ublic employees in an appropriate unit shall have the right by secret ballot to designate an exclusive representative * * *."

that all fair share funds withheld from the employees' paychecks would be placed in an escrow account pending final determination of this action. On the basis of an agreed statement of facts, the trial court held that § 179.65, subd. 2, violated the due process clauses of the Minnesota and United States Constitutions because there is no provision for notice and hearing prior to the determination of the fair share fee.

The issue before the trial court, and before this court, is whether the fair share statute passes constitutional muster when neither it nor any of the other provisions of PELRA specifically provides for a hearing prior to the imposition of the fair share fee upon nonmembers of appellant. This act, like every legislative enactment, comes to us with a presumption in favor of its constitutionality. Klicker v. State, 293 Minn. 149, 197 N. W. 2d 434 (1972) ; Head v. Special School Dist. No. 1, 288 Minn. 496, 182 N. W. 2d 887 (1970), certiorari denied sub nom. Minneapolis Federation of Teachers, Local No. 59, v. Spannaus, 404 U. S. 886, 92 S. Ct. 196, 30 L. ed. 2d 168 (1971). The burden of proof is on the challenging parties to show beyond a reasonable doubt that the act is unconstitutional. Minneapolis Federation of Teachers v. Obermeyer, 275 Minn. 347, 147 N. W. 2d 358 (1966). Further, it is well established that when the constitutionality of a statute is challenged, the language of the entire act must be taken into consideration, and "[i]f the act is reasonably susceptible of two different constructions, one of which will render it constitutional and the other unconstitutional, the former construction must be adopted." State v. Suess, 236 Minn. 174, 181, 52 N. W. 2d 409, 414 (1952) ; In re Taxes on Property of Cold Spring Granite Co. 271 Minn. 460, 136 N. W. 2d 782 (1965).

Since PELRA is challenged on the ground that it denies procedural due process,[2] it is particularly important that we consider

---

[2] All parties agree that persons in the position of respondents are entitled to a hearing on the validity and the amount of the fee at some stage of the proceeding, but respondents argue it must be prior to the withholding of the fee while appellant argues that it may be after the withholding.

those provisions in the act which provide procedural remedies. Section 179.76 of the act states in part:

"It shall be the public policy of the state of Minnesota that every public employee should be provided with the right of independent review, by a disinterested person or agency, of any grievance arising out of the interpretation of or adherence to terms and conditions of employment."

More importantly, § 179.68, subd. 1, of the act provides:

"Any employee * * * aggrieved by an unfair labor practice * * * may bring an action in district court of the county wherein the practice is alleged to have occurred for injunctive relief and for damages caused by such unfair labor practice."

Section 179.68, subds. 2 and 3, detail certain acts, or failures to act, which constitute unfair labor practices. Specifically, § 179.68, subd. 3(1), prohibits employee organizations from "restraining or coercing employees in the exercise of their rights as provided in sections 179.61 to 179.77." Considering these provisions together, we have concluded that the imposition upon a nonmember employee of a fair share fee which is not consistent with the provisions of the statute constitutes an unfair labor practice. Therefore, pursuant to § 179.68, subd. 1, a public employee aggrieved by such a practice may bring an action in district court for injunctive relief. Further, as we construe the statute, the district court, at the request of either party, may determine the validity and proper amount of the fair share fee.

In such an action, the district court shall, at the request of the complaining party, enjoin the *use* of the disputed fees until the exclusive representative establishes to the satisfaction of the district court the validity and correctness of the fee under the statutory formula; and the district court shall provide an appropriate escrow arrangement for the disputed fees until final determination of these questions. Further, the district court may, in the exercise of its sound and cautiously exercised discretion, enjoin the *collection* of such fees if it is persuaded by the complaining

party that the amount of the fee or the circumstances surrounding its assessment clearly indicate that the fee is invalid because it is so excessive that it is punitive or oppressive when measured against the statutory formula, or for other reasons which clearly contravene the statute.

In sum, we have concluded that PELRA should be construed to provide that the public employee has (a) the right to notice of the amount of an impending fair share fee which is to be deducted from his earnings; (b) the right to bring an action in district court to enjoin the use of the withheld fee; (c) the right, under certain exigent circumstances, to have the collection of the fair share fee enjoined; and (d) the right, in all circumstances and upon proper application, to a court hearing on the validity and proper amount of the fair share fee. We have concluded, however, that, in the absence of unusual circumstances, the hearing and final judicial determination of the fee's validity may follow the actual withholding of the fair share fee from the employee's paycheck.

Due process is a flexible standard which does not guarantee any "particular form of procedure," but rather "protects substantial rights." N.L.R.B. v. Mackay Radio & Tel. Co. 304 U. S. 333, 351, 58 S. Ct. 904, 913, 82 L. ed. 1381, 1393 (1938). Most importantly, "[t]he determination of what due process requires in a given context depends on a consideration of both the nature of the governmental function involved and the private interests affected." Mitchell v. W. T. Grant Co. 416 U. S. 600, 624, 94 S. Ct. 1895, 1908, 40 L. ed. 2d 406, 423 (1974) (Powell, J., concurring). See, also, Goldberg v. Kelly, 397 U. S. 254, 90 S. Ct. 1011, 25 L. ed. 2d 287 (1970); Cafeteria & Restaurant Workers Union v. McElroy, 367 U. S. 886, 81 S. Ct. 1743, 6 L. ed. 2d 1230 (1961).

An examination of the conflicting state and individual interests in the instant case convinces us that the procedural remedies encompassed by the statute, as interpreted in this opinion, comply with due process standards. In reaching this conclusion, we

have first evaluated "the nature of the * * * private interests affected" in the instant case and have compared those interests to the individual interests involved in other cases in which the United States Supreme Court has required a hearing prior to the actual taking. In that connection respondents strongly argue that an individual's wages are a "specialized type of property" and that, under Sniadach v. Family Finance Corp. of Bay View, 395 U. S. 337, 89 S. Ct. 1820, 23 L. ed. 2d 349 (1969), an individual must be accorded a prior hearing before deductions may be made from his wages. In Sniadach, the court struck down a Wisconsin statute authorizing a creditor to garnish a debtor's wages without first providing a hearing. The court reasoned that even though the debtor might ultimately recover the garnished wages in the main action the debtor was nevertheless deprived of the use of those funds during the interim.

"* * * Since this deprivation cannot be characterized as *de minimis*, [the debtor] must be accorded the usual requisites of procedural due process: notice and a prior hearing." 395 U. S. 342, 89 S. Ct. 1823, 23 L. ed. 2d 354 (Harlan, J., concurring).

We believe that the requirements of procedural due process depend not upon the particular "type of property" involved, but upon the effect of its deprivation on the individual. In Goldberg, the Supreme Court stated (397 U. S. 262, 90 S. Ct. 1017, 25 L. ed. 2d 296):

"* * * The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U. S. 123, 168 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication."

This aspect of "grievous loss" also dominated the court's opinion in Sniadach (395 U. S. 340, 89 S. Ct. 1822, 23 L. ed. 2d 353):

"A prejudgment garnishment of the Wisconsin type [up to 50 percent of the wages are frozen] is a taking which may impose *tremendous hardship* on wage earners with families to support. * * *

* * * * *

"The result is that a prejudgment garnishment of the Wisconsin type may as a practical matter drive a wage-earning family to the wall." (Italics supplied.)

And in North Georgia Finishing, Inc. v. Di-Chem, Inc. 419 U. S. 601, 95 S. Ct. 719, 42 L. ed. 2d 751 (1975), the Supreme Court's most recent pronouncement on procedural due process, the extent of injury to the individual remains a dominant concern (419 U. S. 608, 95 S. Ct. 723, 42 L. ed. 2d 758):

"* * * It may be that consumers deprived of household appliances will more likely suffer irreparably than corporations deprived of bank accounts, but the probability of *irreparable injury* in the latter case is sufficiently great so that some procedures are necessary to guard against the risk of initial error." (Italics supplied.)

The deprivation threatened by the fair share statute is of a much lesser magnitude than the "grievous loss" in Goldberg, the "tremendous hardship" in Sniadach, or the "irreparable injury" in North Georgia Finishing. In the instant case, the individual interest at stake is less than $10 per month. While this amount will no doubt vary depending on the circumstances, political realities prevent an exclusive representative from attempting to impose an excessively large fee. And if such an attempt is made, the individual employee will be protected by his right, as outlined herein, to enjoin, pending a hearing, the collection of the fee in cases which involve egregious circumstances. Thus, since there are sufficient safeguards in the fair share statute to protect the individual employee from any significant loss of property, safeguards which were lacking in all of the creditor

remedy statutes invalidated by the Supreme Court, the employee's need for a prior hearing is substantially reduced.

The second step in determining the requirements of due process is to examine the "nature of the governmental function involved." Mitchell v. W. T. Grant Co. *supra.* The state's reason for allowing appellant to assess a fair share fee is that a union selected as a bargaining agent by the majority of workers in the appropriate unit must represent all employees in the unit in a nondiscriminatory manner. Unless the nonmember employees in the unit are compelled to contribute to the costs of union representation, they would enjoy the benefits of the bargaining process while the members of the exclusive representative are forced to assume the entire burden of paying for it. In addition, since the members of the exclusive representative may be unable to adequately finance the negotiation and administration of a collective bargaining agreement without such nonmember contributions, the resulting financial instability of the duly elected representative may jeopardize meaningful collective bargaining.[3] See, Buckley v. American Fed. of Television & Radio Artists, 496 F. 2d 305 (2 Cir. 1974), certiorari denied, 419 U. S. 1093, 95 S. Ct. 688, 42 L. ed. 2d 687 (1974).

We have concluded, and we believe our conclusion is supported by the applicable decisions of the United States Supreme Court, that the governmental interest in securing the financial stability of these exclusive representatives is sufficiently strong to override the individual's interest in obtaining a prior determination of the imposed fee's validity. In International Assn. of Machinists v. Street, 367 U. S. 740, 81 S. Ct. 1784, 6 L. ed. 2d 1141 (1961), and in Brotherhood of Railway & Steamship Clerks v.

---

[3] This financial instability might "encourag[e] the union to assume an unnecessarily militant attitude toward management in an effort to rally more employees to its financial support. This instability also encourages the employer to be obstinate, in hopes of forcing a favorable agreement from a weak union." Blair, *Union Security Agreements in Public Employment,* 60 Cornell L. Rev. 183, 189.

Allen, 373 U. S. 113, 83 S. Ct. 1158, 10 L. ed. 2d 235 (1963), the United States Supreme Court considered the importance of the governmental interest in allowing unions to collect statutorily imposed fees. In Street, the plaintiffs complained that a provision of the Railway Labor Act which required employees to become members of the exclusive bargaining union and to pay fees required by the union violated the First and Fifth Amendments in that it permitted the union to force them to financially support political causes which they opposed. The court construed the statute as prohibiting a union from using the forced fees, over employees' objections, to support political causes. In deciding the case, the court vacated a state court injunction against the collection of union fees, stating (367 U. S. 771, 81 S. Ct. 1801, 6 L. ed. 2d 1162) :

"* * * [R]estraining collection of the funds * * * might well interfere with the appellant union's performance of those functions and duties which the [statute] places upon them to attain its goal of stability in the industry. * * * The complete shutoff of this source of income defeats the congressional plan to have all employees benefited share costs 'in the realm of collective bargaining,' * * *."

The court reached the same result in Allen (373 U. S. 120, 83 S. Ct. 1163, 10 L. ed. 2d 241) :

"* * * We think that lest the important functions of labor organizations under the Railway Labor Act be unduly impaired, dissenting employees (at least in the absence of special circumstances not shown here) can be entitled to no relief until final judgment in their favor is entered."

See, also, Railway Employes' Dept., AFL v. Hanson, 351 U. S. 225, 76 S. Ct. 714, 100 L. ed. 1112 (1956).

Thus, although not directly addressing the question of procedural due process, the United States Supreme Court has concluded that absent special circumstances the governmental interest in the regular collection of union fees should not be impaired

by a court injunction. So, too, we have concluded that absent special circumstances the district court should not enjoin the collection of the fair share fees. The "special circumstances" that would justify an injunction against collection would exist if either the amount of the fee, or the circumstances surrounding its assessment, clearly indicate that the fee is invalid or unconscionable under the statutory provisions. In such a case, the state has no interest in permitting the exclusive representative to collect a patently invalid fair share fee.

On the other hand, the governmental interest in union stability is not so compelling as to bar an injunction against the use of the union fees until their validity has been determined in a hearing before the district court. The Supreme Court in Street, and again in Allen, approved a remedy which would enjoin the use of the disputed portion of the fees until the validity of such use could be determined.[4] The responsibility for initiating such a court determination properly rests with the individual employee. As stated in Street (367 U. S. 774, 81 S. Ct. 1803, 6 L. ed. 2d 1164), "dissent is not to be presumed—it must affirmatively be made known to the union by the dissenting employee." Although the individual employees are responsible for initiating the action, it is the union which must bear the ultimate burden of proving the fee's validity. As the court stated in Allen (373 U. S. 122, 83 S. Ct. 1163, 10 L. ed. 2d 241):

"Since the unions possess the facts and records from which the proportion of political to total union expenditures can reasonably be calculated, basic considerations of fairness compel that they, not the individual employees, bear the burden of proving such proportion."

---

[4] The specific remedy suggested by the Court was an injunction against the use of that portion of the fee which "is the proportion of the union's total expenditures made for such political activities to the union's total budget." International Assn. of Machinists v. Street, 367 U. S. 740, 775, 81 S. Ct. 1784, 1803, 6 L. ed. 2d 1141, 1174. Under the facts of the instant case, there would be no need to employ such a formula.

Thus, the Supreme Court contemplated a procedure whereby upon a complaint by an employee a union would be unable to use the disputed portion of fees imposed by statute until the union proved that its use of such fees complied with the governing statute. In the instant case, through the procedures we have outlined, a union would be unable to use the disputed fair share fees until the union proved that the amount of such fees complied with the governing statute.

The probability that under this procedure a particular fair share fee's validity and amount will not be finally determined until after deductions have been made from the employee's paycheck does not render the statute unconstitutional. A prior hearing is not the sine qua non of procedural due process since "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Mitchell v. W. T. Grant Co. 416 U. S. 600, 610, 94 S. Ct. 1895, 1901, 40 L. ed. 2d 406, 415, quoting Cafeteria & Restaurant Workers Union v. McElroy, 367 U. S. 886, 895, 81 S. Ct. 1743, 1748, 6 L. ed. 2d 1230, 1236 (1961). Again, it must be stressed that the procedural protections to which an individual is constitutionally entitled depend on the balancing of interests in each particular case. While the Supreme Court required a prior hearing in Sniadach v. Family Finance Corp. of Bay View, 395 U. S. 337, 89 S. Ct. 1820, 23 L. ed. 2d 349 (1969); Fuentes v. Shevin, 407 U. S. 67, 92 S. Ct. 1983, 32 L. ed. 2d 556 (1972); and North Georgia Finishing, Inc. v. Di-Chem, Inc. 419 U. S. 601, 95 S. Ct. 719, 42 L. ed. 2d 751 (1975), the balance of interests in those cases was significantly different from that in the instant case. As shown herein, the individual property interest in this case is of a much lesser magnitude than was involved in those cases, and the state's interest in the collection of the fair share fee is clearly more substantial than it was in Sniadach, Fuentes, and North Georgia Finishing, which involved creditor-debtor relationships of private citizens. Consequently, since in the instant case the individual's interest is less significant and the state's

interest is more substantial, the demands of procedural due process are correspondingly reduced.

In summary, we hold only that, with respect to procedural requirements, the fair share statute, Minn. St. 179.65, subd. 2, does not violate the due process clauses of the United States or Minnesota Constitutions.[5]

Finally, we invite the attention of the legislature to the questions raised by this appeal. Although there may be factors of which we are not aware, it would not appear that undue delay would be caused if, for example, before the fair share fee was imposed and withheld, the exclusive representative was required to document and submit its calculation of the fee to the director of mediation services or the Public Employees Labor Relations Board.[6] The director or the board could afford interested employees, prior to the actual payroll deduction of the fee, an opportunity to inspect and, if warranted, challenge the validity and amount of the fee. The director or board could then allow, disallow, or modify the proposed fee with a short written statement explaining the action.[7] Such a decisional process might render the imposition of the fee more acceptable to the nonmember employees while also developing a body of precedent to define the proper elements of expense to be included in the fair share fee. Any such procedures, however, are not for this court to impose, but must be left to the sound discretion of the legislature.

---

[5] We have not considered the question of the constitutionality of the fair share fee on grounds other than procedural due process.

[6] The powers and duties of these bodies are contained in Minn. St. 179.71 and 179.72.

In Hawaii, the Hawaii Public Employment Relations Board is the neutral tribunal which determines the bargaining service fee which nonunion employees must pay a majority union under a fair share agreement. See, 525 Govt. Employee Rel. Rep., October 15, 1973, at E-1.

[7] Of course, there would be a right to appeal to the district court from a determination of the director or board. Whether the fee could be deducted and held in escrow during the period of the appeal would be a question for legislative determination.

Reversed.

On December 17, 1976, the following order was made:

Marilyn Threlkeld and Daniel Hanka having appealed from the judgment of the Supreme Court of the State of Minnesota entered herein on February 11, 1976, and

The Supreme Court of the United States having entered the following order with respect to said appeal on October 12, 1976:

"RE: THRELKELD, ET AL. V. ROBBINSDALE FEDERATION OF TEACHERS, LOCAL 872, 75-1628

"The judgment is vacated and the case is remanded to the Supreme Court of Minnesota for further consideration in light of Chapter 102 of the 1976 Session Laws of Minnesota. *Fusari v. Steinberg,* 419 U.S. 379 (1975); *Diffenderfer v. Central Baptist Church,* 404 U.S. 412 (1972)."
and

Darel F. Swenson, of Mannikko & Swenson, Attorneys at Law, Wayzata, Minnesota, having moved this court for an order—

"A. Remanding the above-entitled action to the Honorable Crane Winton, a Judge of the Hennepin County District Court, who heard argument and decided the issues in this case at the trial court level,

"B. Granting leave to plaintiffs-respondents to move to amend their Complaint, and

"C. Directing that the legal and factual issues raised in the Amended Complaint be heard and decided by Judge Winton with rights in plaintiffs-respondents to appeal to this Court from the judgment entered pursuant to Judge Winton's decision."
and

Roger A. Peterson, of Peterson, Engberg & Peterson, Attorneys at Law, Minneapolis, Minnesota, having appeared before this court in response to said motion; and

The court being fully advised in the premises, it is

ORDERED AND DIRECTED that the above entitled matter be and is hereby remanded to the Hennepin County District Court for

further proceedings, including the consideration of such motions as may be made by the parties for amendments of the pleadings on file herein and for the determination of such legal and factual issues as may be required in light of the order of the United States Supreme Court set out above and the pleadings herein, together with such amendments as may be allowed by the said district court.

Rights of appeal are reserved.

Remanded to the Hennepin County District Court for further proceedings.

Dated December 17th, 1976.

MINNESOTA SUPREME COURT<br>
By ROBERT J. SHERAN<br>
Chief Justice