Paul H. ROBINSON, et al., Plaintiffs,

v.

STATE OF NEW JERSEY, Thomas H. Kean, Governor, et al., Defendants.

Joseph W. ANTONACCI, et al., Plaintiffs,

v.

STATE OF NEW JERSEY, Thomas H. Kean, Governor, et al., Defendants.

Allen OLSEN, et al., Plaintiffs,

v.

COMMUNICATIONS WORKERS OF AMERICA (CWA), et al., Defendants.

Civ. A. Nos. 82–1118, 82–1119 and 82–3443.

United States District Court, D. New Jersey.

June 15, 1983.

Henry A. Stein, Jeffry A. Mintz, Stein & Shapiro, Medford, N.J., Nelson Kieff, Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., Jeffrey Cooper, Philadelphia, Pa., for plaintiffs.

Irwin I. Kimmelman, Atty. Gen. of N.J. by Eugene J. Sullivan, Asst. Atty. Gen., Alfred E. Ramey, Jr., Deputy Atty. Gen., Trenton, N.J., for defendant, Thomas H. Kean, Governor, State of N.J.

Sidney H. Lehmann, Gen. Counsel, Robert E. Anderson, Jr., Deputy Gen. Counsel, Public Employment Relations Com'n, Trenton, N.J., for defendant James W. Mastriani, Chairman, Public Employment Relations Com'n.

Edward Ryan, Carpenter, Bennett & Morrissey, Newark, N.J., for defendant Rutgers University.

Mark D. Schorr, Trenton, N.J., Reinhardt & Schachter, P.C. by Paul Schachter, Newark, N.J., for defendants Rutgers Council of American Ass'n of University Professors Chapters, Sandra Walther, Richard Peskin and Richard Laity.

Cassel R. Ruhlman, Jr., Ruhlman & Butrym, Pennington, N.J., Robert H. Chanin, James J. Brudney, Bredhof & Kaiser, Washington, D.C., for defendant New Jersey Educ. Ass'n.

Steven P. Weissman, CWA Dist. 1, Trenton, N.J., James B. Coppess, Adair & Goldthwaite, Washington, D.C., Michael T. Leibig, Zwerdling, Schlossberg, Leibig & Kahn, Washington, D.C., Sidney Reitman, Reitman, Parsonnet, Maisel & Duggan, Newark, N.J., for Communications Workers of America, AFL–CIO, CWA Dist. 1, and Locals 1031, 1032, 1033, 1034, 1037, 1038, 1039, and 1040; Laurence Gold, AFL–CIO, Washington, D.C., of counsel.

## OPINION

DEBEVOISE, District Judge.

Plaintiffs in these three cases challenge the constitutionality of the provisions of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A–1 et seq. (the Act), which permit public employers to withhold and majority union representatives to receive representation fees assessed against employees who are not members of the union. It is now necessary to determine whether additional preliminary injunctive relief must be granted.

## PROCEDURAL BACKGROUND

In April 1982 plaintiffs in the *Robinson* and *Antonacci* cases (now consolidated) filed their complaints. On September 28, 1982 I rendered an opinion in which I concluded: (1) N.J.S.A. 34:13A–5.5(c) is unconstitutional to the extent that it permits use of representation fees over a non-member's objections for "lobbying activities designed to foster policy goals in collective negotiations and contract administration or to secure for the employees represented advantages in wages, hours, and other conditions of employment in addition to those secured through collective negotiations with the employer" and (2) N.J.S.A. 34:13A–5.5 and 5.6 "violate plaintiffs' constitutional rights in that (i) these statutory provisions permit labor organizations to receive and use plaintiffs' representation fees for political, ideological and impermissible lobbying purposes over plaintiffs' objections, and (ii) the demand and return system purportedly designed to enable plaintiffs to recover the portion of their representation fees used for political, ideological and impermissible lobbying purposes does not avoid or cure the improper use of representation fees because it is extraordinarily cumbersome and places heavy burdens upon a claimant."

I entered an order preliminarily enjoining the defendant union from using any portion of plaintiffs' representation fees for impermissible lobbying. In light of the strictures in *International Ass'n of Machinists v. Street*, 367 U.S. 740, 771–775, 81 S.Ct. 1784, 1801–1803, 6 L.Ed.2d 1141 (1961), I did not at that time enjoin collection of representation fees from plaintiffs. Instead I entered an order requiring that certain portions of the fees be placed in escrow and providing that if within six months from the date of the order a representation fee system meeting constitutional requirements had not been established, plaintiffs could apply for additional injunctive relief. *Robinson v. State of N.J.*, 547 F.Supp. 1297 (D.N.J. 1982), appeal pending.

In October 1982 plaintiffs in the *Olsen* case filed their complaint. On March 16, 1983 I rendered an opinion in which, among other things, I reaffirmed my earlier ruling that the lobbying provisions of N.J.S.A. 34:13A–5.5(c) are unconstitutional, and I deferred passing on the constitutionality of CWA's demand and return system until the return date in *Robinson* and *Antonacci* when I was to determine if a representation fee system had been established in those cases which met constitutional requirements. *Olsen v. Communications Workers of America (CWA)*, 559 F.Supp. 754 (D.N.J. 1983), appeal pending.

On May 3, 1983 a hearing was held on that question in all three cases and on various summary judgment motions which the parties had filed in *Robinson* and *Antonacci*. This opinion is directed to the adequacy of the demand and return systems in the three cases as they now exist and to the need for additional preliminary injunctive relief.

## THE FACTS

The statute is described in some detail in *Robinson*. The very rudimentary demand and return systems originally established by the AAUP units and the teacher association units are described in *Robinson*. The highly sophisticated CWA demand and return system which CWA instituted is described in *Olsen*. The other facts pertinent to the present inquiries are set forth in those cases and are incorporated by reference.

Nothing was done after I entered the order in *Robinson* and *Antonacci* either by the defendants in those cases or by the New Jersey legislature to seek to cure or to cure the constitutional defects in the representation fee statute. The union defendants devised and prepared to implement new demand and return systems. The new systems contemplate escrowing a sufficient portion of each objecting non-member's representation fee to ensure that no part of the fee would be spent for political, ideological or improper lobbying purposes prior to exhaustion of the union and state demand and return procedures. The new systems also contemplate the creation of revised union demand and return procedures whereby the unions would be required to establish before outside, independent arbiters the correct-

ness of their fees and the absence of improper expenditures from such fees. Further, the *Robinson* and *Antonacci* union defendants take the position that any objecting non-member may skip the union's demand and return system and proceed directly to the State board of appeals.

These attempts by the *Robinson* and *Antonacci* unions to create effective demand and return systems and the demand and return system established by CWA represent good faith attempts to devise systems which can impartially and accurately determine what portion of a non-member's representation fee is used for contract negotiation, contract administration and processing grievances and what portion is used for other purposes. Sincere and conscientious as these efforts have been, however, they do not avoid or cure the basic constitutional defects in the New Jersey statute.

## CONCLUSIONS OF LAW

N.J.S.A. 34:13A–5.5 b provides that the representation fee "shall be in an amount equivalent to the regular membership dues, initiation fees and assessments charged by the majority representative to its own members" less the cost of benefits available only to members and subject to a maximum of 85% of regular membership dues, fees and assessments. Unless in any case the aggregate cost of member only benefits and of political, ideological and impermissible lobbying activities happens to be less than 15% of regular membership dues, fees and assessments, the statute compels an objecting non-member to pay for the union's partisan political and ideological activities. The only recourse which the objecting non-member has is to proceed under a demand and return system provided for by the statute. I described the original systems involved in *Robinson* and *Antonacci* as follows:

> I set forth in some detail in the findings of fact in this case the efforts which various of the plaintiffs expended in an attempt to pursue the demand and return system contemplated by the New Jersey statute. Were it not apparent from the

face of the statute, it certainly becomes apparent when one reviews these facts that the demand and return system created by N.J.S.A. 34:13A–5.6 imposes heavy burdens on a non-member who pays a representation fee to a multi-tiered union. Even though the burden of proof is on the union, that initial burden can be readily met, as it was in the case of the AAUP and education association proceedings in this case. In each case very simple and conclusory statements as to expenditures were submitted by each union tier—two tiers in the case of AAUP, four tiers in the case of the education associations. Confronted with such a showing, the non-members must then go behind those statements to test not only the propriety of the accounting involved but also the assumptions which were made in allocating expenses to member-only benefits, partisan political activities, and varying kinds of lobbying activities. This the non-members must do before the internal union bodies and then before an administrative law judge. They must proceed before the Appeal Board after the administrative law judge makes his findings and recommendations and they are confronted with an appeal to the Appellate Division of the Superior Court of New Jersey and possibly to the New Jersey Supreme Court.

547 F.Supp. at 1318–1319.

■ It has been a useful exercise to examine the CWA demand and return system and the new systems devised by the *Robinson* and *Antonacci* unions after my original opinion in that case. These constituted genuine attempts to create as effective demand and return systems as human ingenuity could devise. Yet each system is complex and overwhelmingly burdensome. Each requires an objecting member to expend such major efforts to pursue his remedy that no individual could be expected to avail himself of the remedy. Thus under the very best demand and return system no objecting non-member can devote the time and money required to ascertain and, if warranted, regain the portion of his repre-

sentation fee which the union may use for political and ideological purposes. The statutory requirement of a demand and return system is an illusory remedy. As a practical matter, therefore, the statute permits a union to take the funds of objecting non-members and use them for the union's own political and ideological purposes. The good faith efforts of the union defendants in these cases to create workable systems demonstrate that no demand and return system can protect an objecting non-member's First Amendment rights.

■ The union defendants have urged that a non-member has the right to skip the union procedures altogether and to proceed directly before the State appeals board. Even if the New Jersey statute were interpreted to permit such a direct appeal, the burden on the non-member would remain substantial—so substantial that no non-member could be expected to pursue the remedy. The time to pursue the remedy to its completion would be shortened, but it would remain very great, as described in the original *Robinson* opinion, 547 F.Supp. at 1314.[1]

In the original *Robinson* decision I set forth the reasons why I concluded that New Jersey's representation fee system results in an unconstitutional deprivation of objecting non-members' First Amendment rights and that plaintiffs were likely to prevail on the merits, 547 F.Supp. at 1317–1322. Defendants urge that the United States Supreme Court's dismissal of the appeal in *Threlkeld v. Robbinsdale Federation of Teachers, Local 872, AFL–CIO,* —— U.S. ——, 103

S.Ct. 24, 74 L.Ed.2d 40 (1982), requires a different result. An analysis of that case does not support defendants' contentions.

In 1974 Minnesota adopted a "fair share" statute, Minn.St. 179.61 to 179.77, which provided that public employees who were not members of the exclusive bargaining representative could be required to pay through a check off system a fair share fee for services rendered by such representative in an amount not to exceed the non-members' pro rata share "of the specific expenses incurred for services rendered . . . in relationship to negotiations and administration of grievance procedures." Plaintiff school teachers, who were not members of the union, sued in Minnesota state court to invalidate the statute. The trial court held that the statute violated the due process clauses of the Minnesota and United States Constitutions because there was no provision for notice and hearing prior to the determination of the fair share fee. The union appealed to the Minnesota Supreme Court.

The Supreme Court of Minnesota held that an employee who contended that a fair share fee was imposed in violation of the statute:

has (a) the right to notice of the amount of an impending fair share fee which is to be deducted from his earnings; (b) the right to bring an action in district court to enjoin the use of the withheld fee; (c) the right, under certain exigent circumstances, to have the collection of the fair share fee enjoined; and (d) the right, in all circumstances and upon proper appli-

---

1. Plaintiffs have urged that the representation fee statute's demand and return system violates their rights to procedural due process as well as their substantive First Amendment rights. Plaintiffs note that in the first instance an objecting non-member must pursue his claim in a tribunal established by the union against which the claim is made. They further note that an appeal from an adverse determination of the union's tribunal is to an appeals board, two of the three members of which might well have an interest in the outcome—the member representative of public employers and the member representative of public unions. Under the statute only one of the three members is characterized "as a strictly impar-

tial member." However, the State courts have permitted the appeals board to proceed without the appointment and participation of the "impartial member," *Olsen v. State of New Jersey,* Docket No. C–4286–81E (Super.Ct.Chan.Div. July 12, 1982), appeal pending, leaving the decision to the two members who might have an interest in the outcome.

Since I have concluded that the statute violates plaintiffs' substantive due process rights, it is unnecessary to determine this procedural due process question. *Cf. United Farm Workers of America, AFL–CIO v. Arizona Agricultural Employment Relations Board,* 696 F.2d 1216 (9th Cir.1983).

cation, to a court hearing on the validity and proper amount of the fair share fee. We have concluded, however, that, in the absence of unusual circumstances, the hearing and final judicial determination of the fee's validity may follow the actual withholding of the fair share fee from the employee's paycheck.

*Robbinsdale Education Association v. Robbinsdale Federation of Teachers Local 872,* 307 Minn. 96, 239 N.W.2d 437, 441 (Minn. Sup.1976).

The court concluded that the governmental interest in securing the financial stability of the exclusive representatives was sufficiently strong to override the individual's interest in obtaining a prior determination of the fee's validity. However, the court held that the governmental interest in union stability was not so compelling as to bar an injunction against use of the union fees until their validity was determined in a hearing before the state trial court.

The Minnesota Supreme Court held "only that" the procedural requirements of the fair share statute did not violate the due process clauses of the United States and Minnesota Constitutions. It invited the attention of the legislature to other questions raised by the appeal: "... it would not appear that undue delay would be caused if, for example, before the fair share fee was imposed and withheld, the exclusive representative was required to document and submit its calculation of the fee to the director of mediation services or the Public Employees Labor Relations Board. The director or the board could afford interested employees, prior to the actual payroll deduction of the fee, an opportunity to inspect and, if warranted, challenge the validity and amount of the fee. The director or board could then allow, disallow, or modify the proposed fee with a short written statement explaining the action. Such a decisional process might render the imposition of the fee more acceptable to the nonmember employees while also developing a body of precedent to define the proper elements of expense to be included in the fair share fee. Any such procedures, however, are not

for the court to impose, but must be left to the sound discretion of the legislature." 239 N.W.2d at 445.

The judgment of the trial court was reversed on the narrow ground that the procedural requirements of the statute (construed by the court to include an immediate right to test the fair share fee in a proceeding in a state trial court) passed constitutional muster. The defendants appealed to the United States Supreme Court which vacated the Minnesota Supreme Court's judgment of reversal and remanded for further consideration in light of amendments to the fair share fee statute enacted by the Minnesota legislature. 429 U.S. 880, 97 S.Ct. 225, 50 L.Ed.2d 160 (1976). The Minnesota Supreme Court further remanded the case to the trial court.

In 1976 Minn.St. § 179.65, subd. 2 was amended to read in part:

* * * All public employees who are not members of the exclusive representative may be required by said representative to contribute a fair share fee for services rendered by the exclusive representative in an amount equal to the regular membership dues of the exclusive representative, less the cost of benefits financed through the dues and available only to members of the exclusive representative, but in no event shall the fee exceed 85 percent of the regular membership dues. The exclusive representative shall provide advance written notice of the amount of the fair share fee assessment to the director, the employer and to a list furnished by the employer of all employees within the unit. A challenge by an employee or by a person aggrieved by the assessment shall be filed in writing with the director, the public employer, and the exclusive representative, within 30 days after receipt of the written notice. All challenges shall specify those portions of the assessment challenged and the reasons therefor but the burden of proof relating to the amount of the fair share fee shall be on the exclusive representative. * * *

The trial court noted that it was bound by the earlier decision of the Minnesota

Supreme Court and, applying the reasoning of that decision, concluded that "the procedure provided by the legislature with respect to all fair share fee withholdings made after [the amendment of the statute] meets the requirements of procedural due process as established by the Minnesota Supreme Court in its earlier opinion in this matter." (Unreported opinion of the District Court of the Fourth Judicial District, May 6, 1981.)

On appeal from the trial court's judgment the Minnesota Supreme Court affirmed. It reinstated its earlier opinion. It noted that the amended statute, unlike its predecessor "did provide for advance written notice of the amount of the proposed 'fair share fee assessment' and for a hearing subsequent thereto before any fees deducted are transferred to the union." *Threlkeld v. The Robbinsdale Federation of Teachers, Local 872, AFL–CIO,* 316 N.W.2d 551, 552 (Minn.Sup.Ct.1982). Again the court emphasized that "the financial stability of exclusive representatives was of such importance as to override the need to determine the 'fair share' fee's validity prior to its imposition." 316 N.W.2d at 552.

This judgment was also appealed to the United States Supreme Court which dismissed for want of a substantial federal question. —— U.S. ——, 103 S.Ct. 24, 74 L.Ed.2d 40 (1982).

Defendants urge that the Supreme Court's action in dismissing the appeal for lack of a substantial federal question is dispositive of the issues in the present case. They urge correctly that a dismissal of an appeal by the Supreme Court for want of a substantial federal question is an adjudication on the merits. *Colorado Springs Amusements, Ltd. v. Rizzo,* 524 F.2d 571, 575 (3d Cir.1975), *cert. denied,* 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976). However, the present case differs in two fundamental respects from *Threlkeld,* and the issues raised by these differences were not before either the Minnesota Supreme Court or the United States Supreme Court.

In the first place the Minnesota statutes in question permitted fees to be required of non-members for services rendered by the majority representative. The original version of the statute provided that the contribution should not exceed expenses for services rendered in connection with negotiations and administration of grievance procedures. The second version of the statute did not contain such a proviso clause, but it authorized fees only for "services rendered by the exclusive representative." Nowhere in any of the Minnesota trial or Supreme Court decisions was it suggested that the fees could be used even temporarily to pay for the union's political, ideological or lobbying activities.

The New Jersey statute, on the other hand, does permit a fee to be taken from non-members computed in part on the basis of the union's political, ideological and lobbying expenses, subject, as we have seen, to the non-member's theoretical right to recover his pro rata share of such payments through an impossibly burdensome demand and return system.

The fee authorized by the Minnesota legislature was for unquestionably lawful purposes, and the interest of the public in providing for such payments was sufficiently great to override the need to determine the fee's validity prior to its imposition.

On the other hand, the public has no interest whatsoever in facilitating payment of that portion of the fee authorized by the New Jersey legislature which reflects the union's political, ideological and lobbying expenses. In fact the public interest lies in protecting the non-member's First Amendment right not to further causes with which he disagrees. When it dismissed the appeal in *Threlkeld* the United States Supreme Court did not adjudicate the merits of this issue raised by the New Jersey statute.

The second major distinction between the New Jersey and Minnesota statutes is the procedure established under each to determine the validity of the representation fee.

The Minnesota statute provides for advance written notice of the amount of the fee claimed and a hearing before a state tribunal before payment to the union. The New Jersey statute in reality has no provision for determining the propriety of the

fee per se. Instead it has a demand and return system designed to enable a non-member to recover back that portion of the fee used for political and ideological purposes and for impermissible lobbying. The fee is not withheld pending a determination of its appropriateness and the hearings are before the union's tribunal in the first instance and, in the second instance, before an appeals board having union and employer representatives. There is no comparison between the Minnesota and New Jersey hearing procedures. When the United States Supreme Court dismissed the *Threlkeld* appeal it did not adjudicate the issues raised by New Jersey's procedures. The dismissal can be cited for the proposition that a representation fee statute which measures the fee by the services rendered to non-members and which provides for advance written notice of the amount of the proposed fee and for a hearing before a state body subsequent thereto before any fees are transmitted to the union passes constitutional muster. New Jersey's statute hardly fits that description.

If anything, the various opinions in *Threlkeld* serve to illuminate the constitutional infirmities of the New Jersey representation fee statute.

The equitable considerations other than the merits which should guide the court were considered in *Robinson,* 547 F.Supp. at 1322–1324. I deferred enjoining collection of the representation fees charged to plaintiffs in order to give the parties and the legislature an opportunity to cure the constitutional defects in the statute. More than eight months have elapsed since the date of the *Robinson* opinion. The good faith efforts of the *Robinson* and *Antonacci* union defendants to create an effective and burdenless demand and return system have not been, and probably could not have been, successful. The CWA's comprehensive system for allocating costs and providing a forum in which non-members can seek to reclaim the portions of their fees used for political, ideological and lobbying purposes does not give the non-member a practical way of recovering those portions of his payments which should not have been taken from him in the first place. No approach

was made to the New Jersey legislature seeking curative legislation. The New Jersey legislature has done nothing to modify the statute.

If plaintiffs' important constitutional rights are to be protected, injunctive relief must be granted at this time. Effective 30 days from the date of this opinion the employer defendants in each of these cases will be enjoined from paying and the union defendants in each of these cases will be enjoined from receiving representation fees on account of any plaintiff who files written notice with his employer and his majority representative that he objects to payment of such fees. The injunction as to any plaintiff shall remain in effect until the plaintiff withdraws his objection or until the statute is amended (i) so as to exclude from the representation fee expenses for political, ideological and lobbying activities (other than lobbying to secure approval or implementation of a collective bargaining agreement) and (ii) so as to include a provision for a hearing before a state tribunal on the validity of any representation fee prior to payment of the fee to the union.

Plaintiffs' attorneys are requested to prepare a form of order in conformity with this opinion.