THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL HOLDER, Defendant-Appellant.

Second District    No. 80-382

Opinion filed January 27, 1982.

William W. Reedy and Frank P. Vella, Jr., both of Rockford, and Sherman Carmell, of Carmell, Charone and Widmer, Ltd., of Chicago, for appellant.

Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of Elgin, for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Carl Holder, was found guilty of intimidation (Ill. Rev. Stat. 1979, ch. 38, par. 12—6) by a jury in Winnebago County. He was sentenced to 18 months' probation and fined $1,000. Defendant appeals and contests, *inter alia*, the constitutionality of the intimidation statute.

The facts of this case are largely agreed upon between the parties. Five cement truck drivers for the Rockford Redi-Mix Company, Inc.,

were dissatisfied with their wages and working conditions and inquired into the possibility of joining the union. This led them to defendant Carl Holder, a business representative for Teamsters Local 325.

In June of 1979, one of the dissatisfied drivers met with Holder. Holder explained that there were two ways to join the union. The long route required that the employees petition the National Labor Relations Board for a representation election. Holder told the driver that this could take three or more months to do.

Holder explained that the other way to join the union, or short route, was for the employees to sign cards authorizing the union to act as a workers' collective bargaining representative. After a majority of the employees signed the cards, Holder could demand recognition from the employer. If he was not given such recognition there would be a strike.

The driver reported back to his co-workers and another meeting was arranged. At this meeting all the employees attended and reviewed the standard Redi-Mix collective bargaining agreement. There was much concern among the employees that they would lose their jobs or be fired as a result of a strike. Holder suggested that they try and resolve their grievances directly with their employer.

In July of 1979, Holder was contacted and told that the drivers had no luck in talking with their employer. Holder explained the proceedings again and the drivers chose the short route. They signed the cards and arranged to have Holder go to the employer the next morning and present the proposed contract.

The drivers made an agreement with Holder that they would report to work the following morning, load their trucks with cement and proceed to a meeting spot on the way to their assigned job site. When the last truck left, Holder, who would be parked near the plant, would enter the office and demand that the employer recognize the union and sign the union's contract.

At 7:45 in the morning of July 25, Holder and a union secretary entered the office of the general manager of Rockford Redi-Mix, Curt Countryman. He told Countryman they were from the union and represented a majority of his employees. Holder told him that the trucks that had just left the plant were sitting down the road and the drums would not be turning unless Countryman signed the contract. Holder then placed a contract on Countryman's desk and Countryman said he would have to look at it. After a few minutes he told Holder he would not sign the contract and Holder left.

Holder joined the drivers and Countryman was contacted by CB radio from where the drivers were waiting. One of the employees inquired on the CB radio if their representative had been to Countryman's office yet. He told Countryman that the drums would not turn until a contract was signed.

The drivers and Holder went to the job site at about 10:55 a.m. They contacted the employer by radio and left the message that they had arrived at the job site. This was the first time at which the drivers admitted to shutting down the drums on their cement trucks. They left the keys in the ignition of their trucks.

An associate of Countryman's arrived at the job site at about 11:15 a.m. He testified that the cement was hardened in the drums at that time. No drivers were present when he arrived. There was also testimony that the cement could not have hardened so quickly. Countryman testified that he had to replace one drum and had three others jackhammered to remove the hardened cement.

Holder and the drivers were charged by information with felony conspiracy, intimidation and criminal damage to property. Count I alleged that Holder's July 25 conversation with Curt Countryman in Countryman's office was the result of a conspiracy among the defendants to commit the offense of intimidation, *i.e.*, to communicate a threat to the employer to criminally damage four redi-mix trucks "with the intent to cause Curtis L. Countryman to perform the act of signing an employment contract." Counts II and III charge the conversation violated subsections (a)(3) and (7), respectively, of the intimidation statute. Counts IV through VII charged all defendants with criminal damage to the employer's four trucks by allowing the concrete to harden within the drum of each truck.

At the preliminary hearing the trial court found that there was lawful authority to strike and that, therefore, the counts regarding intimidation with the threat of bringing about a strike, under subheading (a)(7) of the statute in question here, was unfounded.

After a trial, the jury exonerated the drivers but Holder was convicted of violating subsection (a)(3) of the intimidation statute, which provides:

> "A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:
> * * *
> (3) commit any criminal offense; * * *." Ill. Rev. Stat. 1979, ch. 38, par. 12—6(a)(3).

Defendant's first contention is that subsection (a)(3) is unconstitutionally overbroad or vague. This statute was found to be overbroad by Judge Will of the United States District Court, Northern District of Illinois, in *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938 (hereinafter *Landry*.) This decision was reversed on other grounds by the Supreme Court in *Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758, where it was found that the plaintiffs lacked standing to raise the issue of the constitutionality of the statute.

Because the Supreme Court did not reach the issue of the constitutionality of the intimidation statute, Judge Will's discussion of the issue remains as persuasive authority. Although we are not bound by it, we are nonetheless compelled by the reasoning set forth in *Landry* and do conclude subsection (a)(3) of the intimidation statute is unconstitutional.

Judge Will found that subsection (a)(3) was overbroad because it "prohibits threats of insubstantial evil." (280 F. Supp. 938, 964.) He noted that subsection (a)(3) could make criminal threats by dissentient groups to engage in disorderly conduct, or threats by mothers to block a dangerous State highway to demonstrate the need for increased safety measures. He stated that "indeed, the phrase 'commit any criminal offense' is so broad as to include threats to commit misdemeanors punishable by fine only. These evils are not so substantial that the state's interest in prohibiting the threat of them outweighs the public interest in giving legitimate political discussion wide berth." 280 F. Supp. 938, 964.

Freedom of speech has long been recognized as occupying a preferred position. (*Murdock v. Pennsylvania* (1943), 319 U.S. 105, 115, 87 L. Ed. 1292, 1300, 63 S. Ct. 870, 876.) It is not necessary that the record show us that Holder has engaged in privileged conduct. Rather, the mere fact that other applications of the statute in question, to other facts, can have impact on first amendment rights is sufficient to invalidate the statute regardless of whether the defendant has engaged in privileged conduct. *NAACP v. Button* (1963), 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328.

An overbroad statute has been described as one that:

> "* * * is designed to burden or punish activities which are not constitutionally protected, but the statute includes within its scope activities which are protected by the First Amendment. In a case of a statute which is overbroad on its face, the speaker's actions or speech may not be protected by the First Amendment and thus the act could have been prohibited under a carefully drawn statute. Nevertheless the Court will strike the overbroad statute because it might apply to others, not before the Court, who may engage in protected activity which the statute appears to outlaw." J. Nowak, R. Rotunda, & J. Young, Constitutional Law 722 (1978).

In *Landry*, Judge Will held that (a)(3) was overbroad because it could be enforced so as to encompass insignificant criminal threats or misdemeanors. We agree.

The State contends that the overbreadth doctrine has been reevaluated by the Supreme Court since *Landry* and the doctrine will now only be applied as a last resort (*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908). A specific test was set forth by the court in *Broadrick*. It stated that a statute would be invalidated for overbreadth

"only when the flaw is a substantial concern in the context of the statute as a whole." 413 U.S. 601, 616 n.14, 37 L. Ed. 2d 830, 842 n.14, 93 S. Ct. 2908, 2918 n.14.

We are of the opinion that when the *Broadrick* test is applied to the intimidation statute as a whole, (a)(3) is an overbroad restriction on freedom of speech and is invalid. As stated by Judge Will, if the threat is carried out then the persons who violate the criminal law by their acts are subject to punishment. However, to make it an offense to threaten to commit any crime, no matter how minor or insubstantial, is a substantial flaw in the statute. We make no finding with regard to the national policy on labor and are concerned only with whether (a)(3) is violative of the first amendment.

Our decision should not be considered as a stamp of approval for the tactics employed by Holder or the drivers. Nor do we find that Holder's statement was protected by the Federally created right to strike. *Old Dominion Branch No. 496 v. Austin* (1974), 418 U.S. 264, 41 L. Ed. 2d 745, 94 S. Ct. 2770.

Because (a)(3) proscribes conduct that may be constitutionally protected we hold it invalid. We do not consider the other arguments raised by the parties. For these reasons the judgment of the circuit court is reversed.

Reversed.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.