(No. 56383.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CARL HOLDER, Appellee.

*Opinion filed June 9, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield, and Daniel D. Doyle, State's Attorney, of Rockford (Michael B. Weinstein and Marcia L. Friedl, Assistant Attorneys General, of Chicago, and Phyllis J. Perko and Cynthia N. Schneider, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

Sherman Carmell, of Carmell, Charone & Widmer, Ltd., of Chicago, for appellee.

JUSTICE CLARK delivered the opinion of the court:

The defendant, Carl Holder, was convicted of intimidation under section 12—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 12—6) at a jury trial in the circuit court of Winnebago County and sentenced to 18 months' probation and fined $1,000. The defendant appealed. The appellate court reversed the defendant's conviction in declaring section 12—6(a)(3) of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 12—6(a)(3)) to be unconstitutionally overbroad. (103 Ill. App. 3d 353.) On May 28, 1982, this court granted the State's petition for leave to appeal from that judgment.

The circumstances of this case involve a labor dispute which arose during June and July of 1979 at the Rockford Redi-Mix Company, Inc., a Rockford corporation engaged in the business of delivering liquified cement by truck to local construction and commercial sites. Duane Countryman was the president of the company and his son Curtis L. Countryman was the general manager.

In June of 1979, several of the truck drivers employed by the Rockford Redi-Mix Company contacted the defendant, Carl Holder, who had worked for nine years as a busi-

ness representative for Teamsters Local 325, to investigate the possibility of joining the union. The employees were dissatisfied with their wages and their working conditions.

The defendant advised the employees that there were two procedures available to them in seeking union recognition. Under the "long route," the drivers could petition the National Labor Relations Board for a representation election, a process which could take three or more months. Pursuant to the "short route," the drivers could sign cards authorizing the union to act as their collective-bargaining representative, whereupon the defendant could demand recognition from the company. The drivers chose the "short route" at a meeting on July 24, 1979, and signed authorization cards.

The defendant suggested that the drivers accompany him in presenting the authorization cards and contract to the company, but the drivers asked that the defendant go alone. The employees agreed at the meeting on the 24th that the following morning they would leave the employer's plant as scheduled and proceed to Genoa Road on the way to the Kirkland job site in De Kalb County. It was agreed that the employees would wait on Genoa Road while the defendant would enter the company's office and demand that the company recognize the union and sign the union's standard ready-mix contract. Holder would tell the employer that if the demands were not met the employees would strike. The employees hoped that Holder's unannounced appearance and threat of a strike with the trucks full of cement and scheduled for a pour at the Kirkland job site would be added leverage to have the employer recognize the union and sign the standard contract.

On July 25 at about 7:45 a.m., after the employees had left the plant, Holder and Russ Olson, the union's secretary-treasurer, entered the employer's office and found Curtis Countryman alone. According to Countryman, Holder said that he was from the Teamsters Union Local

325, that he represented the majority of the employees, that they had signed authorization cards, that the trucks had just left and were sitting down the road, and "that the drums aren't turning until I [Countryman] signed the contract." The defendant denied referring to the trucks or drums.

The defendant then laid a contract on Countryman's desk. Countryman said that he would have to read the contract. He thumbed through the pages and asked a question about article I of the contract. Countryman looked at the contract again and then indicated that he could not sign it. Holder testified that he then said, "Okay, sir, you've got a strike on your hands."

Thereafter the defendant returned to the drivers and informed them that the contract would not be accepted. They proceeded to the Kirkland job site and advised the company office of their arrival by radio, but received no response. According to the drivers, the concrete in the drums had been agitating until this time; they stated that they then shut down the trucks, left the keys in the ignitions, and drove to the union office with the defendant and Olson.

Jim Prunty, an associate of Duane Countryman, testified that he arrived at the job site and found the cement hardened in the trucks' drums. Defense witnesses testified that the cement would not have hardened in that time and that Prunty could not have felt the hardened cement in the drum of one truck as Prunty had described. Witnesses for the defense testified that there simply was not enough time between the point at which the drums stopped turning and the point at which Mr. Prunty said that he felt the cement hardened for that cement to harden. Curtis Countryman stated that it was necessary to replace one of the drums and to jackhammer the others to remove the hardened cement.

Holder and the employees were charged in an amended

seven-count information with the felonies of conspiracy, intimidation and criminal damage to property. The jury acquitted the drivers and convicted Holder on count II, intimidation, from which this appeal arose.

The defendant asserts that section 12—6(a)(3) of the Criminal Code of 1961 is overbroad and in conflict with the first amendment. Generally, a person to whom a statute may constitutionally be applied will not be permitted to challenge the statute on the ground that it could in another context be applied unconstitutionally to another party. (*United States v. Raines* (1960), 362 U.S. 17, 4 L. Ed. 2d 524, 80 S. Ct. 519.) However, the traditional rule of standing is not applicable when a party is asserting his first amendment rights. The validity of an overly broad statute may be contested "with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski v. Pfister* (1965), 380 U.S. 479, 486, 14 L. Ed. 2d 22, 28, 85 S. Ct. 1116, 1121.

The defendant claims that section 12—6(a)(3) of the Code can be applied unconstitutionally in other contexts to other people that are legitimately exercising their first amendment rights. Holder can attack subsection (a)(3) on the grounds that it is overbroad under the first amendment without showing that his conduct is protected. (*Talsky v. Department of Registration & Education* (1977) 68 Ill. 2d 579, 590; *Gooding v. Wilson* (1972), 405 U.S. 518, 521-22, 31 L. Ed. 2d 408, 413-14, 92 S. Ct. 1103, 1105-06.) An exception is culled out from the general rule of standing in first amendment cases since application of that rule would "itself have an inhibitory effect on freedom of speech." (*United States v. Raines* (1960), 362 U.S. 17, 22, 4 L. Ed. 2d 524, 530, 80 S. Ct. 519, 523.) The rationale is to see that permissible speech is not inhibited. *Talsky v. Department of Registration & Education* (1977), 68 Ill. 2d 579, 590.

The defendant complains that section 12—6(a)(3) of the Code is overbroad because it makes it a criminal violation to engage in uninhibited discussion and effectively prohibits speech that is clearly protected by the first amendment.

Section 12—6(a)(3) of the Criminal Code of 1961, under which the defendant was convicted, provides:

> "A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:
>
> * * *
>
> (3) Commit any criminal offense; ***." Ill. Rev. Stat. 1979, ch. 38, par. 12—6(a)(3).

In *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908, the Supreme Court addressed an overbreadth attack on an Oklahoma statute that barred political activities by State employees. Oklahoma State employees were charged by the Oklahoma State Personnel Board with engaging in partisan political activities that included the solicitation of money for their superior. The court found that the overbreadth must be "substantial" before a statute regulating conduct will be invalidated on its face. In *Broadrick* the court recognized that the State, in attempting to maintain control over "harmful, constitutionally unprotected conduct," may, in wording a statute too broadly, "deter protected speech to some unknown extent" (413 U.S. 601, 615, 37 L. Ed. 2d 830, 842, 93 S. Ct. 2908, 2917) but concluded that "there comes a point where that effect *** cannot *** justify invalidating a statute on its face ***. To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." 413 U.S. 601, 615, 37 L. Ed. 2d 830, 842, 93 S. Ct. 2908, 2917-18.

In finding section 12—6(a)(3) to be overbroad on its face the appellate court buttressed its decision with a 1968 opin-

ion of the Federal District Court for the Northern District of Illinois that examined an overbreadth attack on section 12—6(a)(3) in *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, *rev'd on other grounds sub. nom. Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758. The *Landry* case involved a class action complaint that alleged that the officers of the city of Chicago or the officers of Ccok County purposefully entered into a plan amongst themselves and other unknown persons to deprive the plaintiffs of constitutional rights as well as rights secured by the laws of the United States. The plaintiffs attacked section 12—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 12—6), contending that it had a chilling effect on their exercise of first amendment rights, although none of the plaintiffs had at the time of the suit faced prosecution under the statute. The court in *Landry* said:

"Sub-paragraph (a)(3) prohibits threats to 'commit any criminal offense.' The qualifying phrase, 'without lawful authority,' is redundant as applied to this sub-paragraph, since a criminal offense, by definition cannot be committed with lawful authority. The word 'offense' is defined in the Illinois Criminal Code as meaning 'a violation of any penal statute of this State.' [See Ill. Rev. Stat. 1967, ch. 38, par. 2—12.] Consequently, the sub-paragraph makes criminal threats to violate any Illinois statute imposing a penalty. The addition of the adjective 'criminal' does not narrow the meaning of this provision.

The provision is not vague. It is however, overbroad since it prohibits threats of insubstantial evil. The commission of criminal offenses against persons or property is a substantial evil, and the state may legitimately proscribe the making of threats to commit such offenses. The commission of offenses against public order *only*, however, is not such a substantial evil that the state may prohibit the threat of it. Sub-paragraph (a)(3) proscribes threats to violate *any* penal statute. It therefore makes criminal threats such as the following: (1) threats by dissentient [*sic*] groups to engage in disorderly conduct [see Ill. Rev. Stat. 1967, ch. 38, par. 26—1] threats by resi-

dents of a high-crime neighborhood to carry concealed weapons for their own protection [see Ill. Rev. Stat. 1967, ch. 38, par. 24—1(a)(4)] and threats by mothers to block a dangerous state highway to demonstrate the need for increased safety measures. [See Ill. Rev. Stat. 1957, ch. 95½, par. 197.] Indeed, the phrase 'commit any criminal offense' is so broad as to include threats to commit misdemeanors punishable by fine only. These evils are not so substantial that the state's interest in prohibiting the threat of them outweighs the public interest in giving legitimate political discussion a wide berth.

Since the language of sub-paragraph (a)(3) is an overbroad restriction on freedom of speech, it is invalid. Obviously, however, if the threat is carried out, the persons who violate the criminal law by their acts are subject to punishment. Therefore, we hold only that making it an offense to threaten to commit any crime, no matter how minor or insubstantial, is an unwarranted limitation." *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 964 *rev'd on other grounds sub nom. Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758.

However, the court's decision preceded *Broadrick,* where the Supreme Court held that the overbreadth of a statute must be real and substantial.

We believe the recent Supreme Court pronouncement in *New York v. Ferber* (1982), 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348, supports upholding the statute at hand in an overbreadth attack. In *Ferber* the Supreme Court applied the substantial-overbreadth doctrine beyond conduct. The court indicated that the analysis employed was appropriate in a case that concerned itself with a serious national problem of "the exploitive use of children in the production of pornography." (458 U.S. 747, 749, 73 L. Ed. 2d 1113, 1117, 102 S. Ct. 3348, 3350.) In discussing whether the statute was overbroad because it would forbid the production and distribution of materials that fall within the orbit of the first amendment, the Supreme Court said that *Broadrick* "intimated [that] the requirement of sub-

stantial overbreadth extended 'at the very least' to cases involving conduct plus speech." The court then found "that the rationale of *Broadrick* is sound and should be applied in the present context involving the harmful employment of children to make sexually explicit materials for distribution."

The court then went on to the substantial-overbreadth test.

"Applying these principles, we hold that section 263.15 is not substantially overbroad. We consider this the paradigmatic case of a state statute whose legitimate reach dwarfs its arguably impermissible applications. New York, as we have held, may constitutionally prohibit dissemination of material specified in section 263.15. While the reach of the statute is directed at the hard core of child pornography, the Court of Appeals was understandably concerned that some protected expression, ranging from medical textbooks to pictorials in the National Geographic would fall prey to the statute. How often, if ever, it may be necessary to employ children to engage in conduct clearly within the reach of the section 263.15 in order to produce educational, medical or artistic works cannot be known with certainty. Yet we seriously doubt, and it has not been suggested, that these arguably impermissible applications of the statute amount to more than a tiny fraction of the materials within the statute's reach. Nor will we assume that the New York courts will widen the possibly invalid reach of the statute by giving an expansive construction to the proscription on 'lewd exhibition[s] of the genitals.' Under these circumstances, section 263.15 is 'not substantially overbroad and . . . whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.' *Broadrick v. Oklahoma* [(1973), 413 U.S. 601, 615-16, 37 L. Ed. 2d 830, 842, 93 S. Ct. 2908, 2918.]" *New York v. Ferber* (1982), 458 U.S. 747, 773-74, 73 L. Ed. 2d 1113, 1133, 102 S. Ct. 3348, 3363.

While it is true that under section 12—6(a)(3) one could be prosecuted for threatening to picket in front of a city

hall without a permit (Ill. Rev. Stat. 1979, ch. 38, par. 85—3), or threatening to distribute literature that is deemed "offensive" within the right-of-way limits of a State toll highway (Ill. Rev. Stat. 1979, ch. 121, par. 314a47½), we find that any such conceivable impermissible applications are dwarfed by the statute's legitimate reach in prohibiting threatened criminal activity.

The *Broadrick* court said that a statute would be declared to be overbroad on its face "only when the flaw is a substantial concern in the context of the statute as a whole." *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 616 n.14, 37 L. Ed. 2d 830, 842 n.14, 93 S. Ct. 2908, 2918 n.14.

We feel that the flaw in section 12—6(a)(3) is not a "substantial concern" when viewed in the context of the legitimate sweep of an intimidation statute.

We therefore reverse the holding of the appellate court that section 12—6(a)(3) is overbroad on its face and therefore invalid.

Because the appellate court, in view of its holding, did not consider the other arguments raised by the parties, we now remand to the appellate court for a consideration of those issues. We further direct the appellate court to make a preliminary finding as to any labor law preemption question under the National Labor Relations Act (29 U.S.C. sec. 157) that may arise in prosecuting this defendant under section 12—6(a)(3) of the Illinois intimidation statute.

*Reversed and remanded,*
*with directions.*

JUSTICE GOLDENHERSH, dissenting:

I dissent and would affirm the decision of the appellate court. I do not quarrel with the majority's analysis of the holding in *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908, and *Landry v. Daley* (N.D.

Ill. 1968), 280 F. Supp. 938, but I am of the opinion that the rules were incorrectly applied to the facts in this case. Section 12—6(a)(3) of the Criminal Code of 1961 provides in pertinent part:

> "A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:
>
> * * *
>
> 3. Commit any criminal offense; ***." (Ill. Rev. Stat. 1979, ch. 38, par. 12—6(a)(3).)

The offense of intimidation consists of speech, the communication of a threat. It involves only speech because the conduct purportedly threatened, "any criminal offense," must of necessity be proscribed under another section of the Code.

In contrast, the statute upheld in *Broadrick* clearly involved action. It is clear that the limitation of overbreadth scrutiny applied in *Broadrick* is applicable only when conduct, and not merely speech, is involved. Thus, in *Broadrick* the Supreme Court upheld the validity of an Oklahoma statute involving restrictions on political campaign activity and in *New York v. Ferber* (1982), 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348, held valid a New York statute prohibiting the knowing promotion of a sexual performance by a child under the age of 16 by distributing material which depicted the performance.

Section 12—6(a)(3) strikes at the heart of the political process by silencing those who in the furtherance of their political goals may advocate use of unlawful means. As pointed out by the appellate court, the statute here involved makes it "an offense to threaten to commit any crime, no matter how minor or insubstantial." (103 Ill. App. 3d 353, 357.) As the majority points out, it prohibits people from threatening to picket in front of a city hall without a permit (Ill. Rev. Stat. 1979, ch. 38, par. 85—3)

and from threatening to distribute literature that is deemed "offensive" within the right-of-way limits of a State toll highway (Ill. Rev. Stat. 1979, ch. 121, par. 314a47½). The statute would also prohibit people from threatening to commit misdemeanors and other "evils [which] are not so substantial that the state's interest in prohibiting the threat of them outweighs the public interest in giving legitimate political discussion a wide berth." *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 964, *rev'd on other grounds sub. nom. Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758.

The Supreme Court has long recognized that a fair and robust debate on issues of public importance can be guaranteed only if those who merely advocate criminal acts receive some protection against recrimination by the sovereign. The State may punish a citizen for advocating criminal acts only "where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio* (1969), 395 U.S. 444, 447, 23 L. Ed. 2d 430, 434, 89 S. Ct. 1827, 1829.

Section 12—6(a)(3) is overbroad because it makes unlawful significant speech which is protected under the first amendment. The statute prohibits a threat of criminal action even though the threatened criminal act is neither imminent nor substantial. Moreover, the statute prohibits the threat even though there is no substantial likelihood that the criminal act will ever occur. In many situations the threatened criminal activity will not be imminent, substantial, and likely. As a result the statute, if continued to be regarded as valid, will silence much speech which is protected by the first amendment, for "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." (*Gooding v. Wilson* (1972), 405 U.S. 518, 521, 31 L.

Ed. 2d 408, 413, 92 S. Ct. 1103, 1105.) For this reason I would affirm the judgment of the appellate court, and declare the statute void under the overbreadth doctrine.

JUSTICE SIMON joins in this dissent.