**Elizabeth PERRY, Plaintiff-Appellee,**

v.

**LOCAL LODGE 2569 OF the INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Defendant-Appellant.**

**No. 82–1938.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1982.

Decided May 31, 1983.

William Julian, II, Lewis, Bowman, St. Clair & Wagner, Indianapolis, Ind., for defendant-appellant.

P. Stephen Miller, Lebrato & Miller, Fort Wayne, Ind., for plaintiff-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

This is an appeal from a preliminary injunction ordering the City of Fort Wayne ("City") to reinstate the plaintiff to her job with the City and not to condition the plaintiff's employment on the payment of union dues or an equivalent agency fee. Noting jurisdiction under 28 U.S.C. § 1292(a), we affirm the order on a ground not relied on by the district court.

I.

On March 26, 1980, the plaintiff began working for the City as a Comprehensive Employment Training Act staff member. In this position, the plaintiff was a member of a bargaining unit represented by Local Lodge 2569 of the International Association of Machinists and Aerospace Workers ("Union"). Under the terms of the collective bargaining agreement between the Union and the City, employees represented by the Union must join the Union or pay an agency fee, which is equal in amount to union dues. This type of arrangement is known as an "agency shop" provision.

For some time the plaintiff failed to join the Union or pay an agency fee. After being on the job for about nine months, the plaintiff was contacted by the Union and told to pay her dues. On February 26, 1981, the plaintiff submitted a check to the Union in payment of her initiation fee and her first month's dues. At that time she also sent the Union a letter stating that she refused to join the Union. The plaintiff further stated in this letter that she refused to pay fees that would be spent on matters not related to the Union's duties as collective bargaining representative. Finally, the plaintiff demanded a rebate of the amount of her initiation fee and first month's dues that "exceeds the amount germane for collective bargaining purposes."

Responding to this letter, the Union sent the plaintiff "Circular 669" which describes the Union's policy regarding refunds to those who object to the use of their fees for political purposes. Apart from mailing this circular to the plaintiff, the Union made no attempt to explain the refund procedure to the plaintiff. Nonetheless, the plaintiff continued to pay dues for three more months; however, she stopped payments when she became unsure whether she would get the refunds that she demanded.

On February 22, 1982, the Union petitioned the City to dismiss the plaintiff because of her failure to pay union dues or agency fees. The plaintiff was terminated that same day, and three days later she brought this suit against the City and the Union. The plaintiff moved for a preliminary injunction and an evidentiary hearing was held. On May 14, 1982, the district court issued its order requiring the City to reinstate the plaintiff and not to condition her employment on the payment of union dues or agency fees. Moreover, during the pendency of this case, the plaintiff must pay to the Clerk of the Court an amount

equal to the monthly fees required under the collective bargaining agreement between the City and the Union. The Union, contending that the district judge abused his discretion, appeals.

## II.

The district court correctly noted that the starting point for analysis is the Supreme Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). In that case, Detroit schoolteachers sought a declaration that their First Amendment rights were violated by an agency shop provision in the collective bargaining agreement covering their positions. The Court noted that agency shop provisions have an impact on the First Amendment interest to be free to associate or not to associate with certain groups. To determine whether the agency shop provision was constitutional, therefore, the Court measured the impact on First Amendment interests against the governmental interests supporting the agency shop provision. The balance, according to the Court, varied depending on how the fees collected by the union are spent. The Court held that it is constitutional for a governmental entity to condition employment on the payment of agency fees insofar as the fees "are applied to collective-bargaining, contract administration, and grievance-adjustment procedures." *Id.* at 232, 97 S.Ct. at 1798. The Court further held, however, that government employees may "constitutionally prevent [a] Union's spending a part of their required [agency] fees to contribute to political campaigns and to express political views unrelated to its duties as exclusive bargaining representative." *Id.* at 234, 97 S.Ct. at 1799.

Relying on *Abood,* the district court noted that conditioning the plaintiff's employment on the payment of agency fees, however expended, implicates First Amendment

interests. In its search for governmental interests to balance against this impact on constitutional concerns, the court looked only to Indiana state statutes. The district court construed *Abood* as requiring a state legislative determination that agency shop provisions promote governmental interests. Because the court found no state statute expressing such a view, the court concluded that the plaintiff had shown a likelihood of prevailing on her claim that the City cannot compel payment of any agency fee.

■ We believe that the district judge misconstrued the decision in *Abood* and too narrowly confined his search for governmental interests. We know of no doctrine of constitutional law that requires cities and other political subdivisions to point to state statutes as the only source evidencing governmental interests. On the contrary, when the rules of local entities are challenged on First Amendment grounds, the local entities are free, indeed often compelled, to assert their own important governmental interests justifying the rules.[1] *See, e.g., Perry Education Association v. Perry Local Educators' Association,* —— U.S. ——, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). A local government facing a constitutional challenge is not left undefended merely because the state legislature has not enacted a statute expressing a policy that justifies the challenged local rule.

■ Indeed, there is generally no requirement that local governmental bodies express the interests that led to the creation of a rule or ordinance; attorneys representing such bodies in court may define

---

1. The district court, in holding that a state legislative determination of governmental interests is needed, relied on *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). That case, however, was concerned with congressional in-

tent in granting sovereign immunity under the Sherman Act. *See id.,* 102 S.Ct. at 842. The case provides no support for the view that cities may only look to state statutes to discover important governmental interests.

and advance those interests.[2] *See, e.g., Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 636, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980); *Elrod v. Burns,* 427 U.S. 347, 368, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1976); *accord Federal Election Commission v. National Right to Work Committee,* —— U.S. ——, 103 S.Ct. 552, 559, 74 L.Ed.2d 364 (1982). Moreover, legitimate governmental interests that have been recognized in past judicial opinions may be called forth to support a newly challenged practice or law. *See, e.g., Perry Education Association v. Perry Local Educators' Association,* —— U.S. ——, 103 S.Ct. 948, 959, 74 L.Ed.2d 794 (1983).

A review of *Abood* itself reveals that the constitutionality of an agency shop provision is not contingent upon the existence of a state statute expressing the interests justifying such a provision. The Court in *Abood* surveyed the prior case law and discerned two interests justifying agency shop provisions—stable labor relations and fair distribution of costs among those employees who benefit from union representation. *See* 431 U.S. at 220–22, 97 S.Ct. at 1791–1792. Relying on its decision in *Railway Employes' Dept. v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), and *International Association of Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), the Court held that "insofar as the [agency fee] is used to finance expenditures by the Union for purposes of collective bargaining, contract administration, and grievance adjustment, those two decisions of this Court appear to require validation of the agency-shop agreement before us." 431 U.S. at 225–26, 97 S.Ct. at 1794–1795.

■ As the Supreme Court relied on *Street* and *Hanson* to uphold the agency shop provision in *Abood,* we must rely on *Abood* to validate the agency shop provision in this case insofar as the Union spends the collected fees on non-political matters. This conclusion, however, does not end our inquiry and does not compel reversal. We believe, for reasons not expressed by the

able district judge, that the plaintiff did demonstrate a likelihood of success on the claim that her termination was violative of her First Amendment rights.

The Union acknowledges that some collected fees are spent on political matters unrelated to its duties as exclusive bargaining representative. Moreover, it is clear that the plaintiff, as a government employee who pays agency fees, has a First Amendment right to prevent the Union from spending her money on ideological causes not germane to the Union's duties as collective bargaining representative. *See Abood,* 431 U.S. at 235–36, 97 S.Ct. at 1799–1800. The Union maintains, however, that because a refund procedure exists whereby the plaintiff can receive a rebate of her fees spent on political causes, the First Amendment does not prohibit the Union from collecting the whole fee (i.e. both political and non-political components).

The merits of the Union's argument were clearly left open by the Supreme Court in *Abood. See* 431 U.S. at 242 n. 45, 97 S.Ct. at 1803 n. 45; 431 U.S. at 244, 97 S.Ct. at 1804 (Stevens, J., concurring); *see also Robinson v. State of New Jersey,* 547 F.Supp. 1297, 1318 (D.N.J.1982). Since then courts have split on the issue whether a refund procedure cures the First Amendment problems created when a union spends agency fees on political causes. Some courts have found rebate procedures sufficient to protect an employee's rights. *See, e.g., Ellis v. Brotherhood of Railway, Airline and Steamship Clerks,* 685 F.2d 1065, 1070 (9th Cir. 1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1767, 76 L.Ed.2d 341 (1983). Other courts have held that an agency fee system requiring continual payments and subsequent refunds to claimants does not satisfy the requirements of the First Amendment. *See, e.g., Robinson v. State of New Jersey,* 547 F.Supp. 1297, 1321 (D.N.J.1982); *School Committee of Greenfield v. Greenfield Education Association,* 385 Mass. 70, 431 N.E.2d 180, 189 (1982); *see generally Galda v. Bloustein,* 686 F.2d 159, 168 (3rd Cir.1982).

---

**2.** The defendants in this case, in fact, presented testimony to support their contention that agency shop provisions promote stable labor relations.

We need not presently select the better position, however, because all courts have agreed that, at least, a rebate system must be fair, administered in good faith, and not cumbersome. *See, e.g., Ellis v. Brotherhood of Railway, Airline and Steamship Clerks,* 685 F.2d 1065, 1070 (9th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1767, 76 L.Ed.2d 341 (1983); *Robinson v. State of New Jersey,* 547 F.Supp. 1297, 1321 (D.N.J. 1982). This agreement stems from the principle that when First Amendment interests are at stake, the least restrictive means of effectuating government interests must be employed, *see Kusper v. Pontikes,* 414 U.S. 51, 58–59, 94 S.Ct. 303, 308–309, 38 L.Ed.2d 260 (1973).

■ From our review of the evidence, the plaintiff has shown a reasonable likelihood of establishing that the Union's refund system is inadequate to protect her First Amendment right not to be coerced into financing the Union's political objectives. A Union official testified that a person who applies for a rebate pursuant to the Union's Circular 669, may have to wait 18 months for a refund. The official equivocated in this testimony because the plaintiff is the first local employee to request a refund for fees spent on political matters; when employees in the past have objected to the Union's political activities, a union official has talked to them and convinced them to change their minds. Moreover, the rebate procedure detailed in Circular 669 has some highly technical provisions. For instance, an objector must send his or her objection by registered or certified mail to the Union's General Secretary-Treasurer and the Recording Secretary of the local lodge. Such an objection is timely only during the first 14 days of union membership and during the 14 days following each anniversary of union membership. Also, according to the circular, an objection is not automatically renewed, but rather must be made every year.

If a person clears these procedural hurdles, then the Union's Committee on Law determines the approximate amount of the member's fees that were spent on political causes. An objecting party who is dissatisfied with the Committee on Law's determination may appeal to the Executive Council. The objecting party apparently bears the burden of establishing error; the Union is not compelled to justify its decision. *See Seay v. McDonnell Douglas Corp.,* 533 F.2d 1126, 1131–32 (9th Cir.1976). Indeed this fact, coupled with the possibility that a union may employ accounting techniques to mask political expenditures, led the Ninth Circuit in *Seay v. McDonnell Douglas Corp.,* to remand the case to the district court for plenary consideration of the fairness and adequacy of the rebate procedure detailed in Circular 669. *See* 553 F.2d at 1132.

In sum, even if some rebate systems remedy what otherwise would be unconstitutional forced subsidization of political activities, there is a reasonable likelihood that the system in this case does not. From the evidence presently in the record, the refund system described in Circular 669 and administered by the Union might well be described as cumbersome, unfair, and certainly not the least restrictive means of advancing legitimate governmental interests. The plaintiff has demonstrated, therefore, a reasonable likelihood of prevailing on her claim that her discharge for failure to pay agency fees was violative of the First Amendment.

■ Finally, we reject the Union's argument that the plaintiff was not dismissed for exercising her First Amendment right not to finance the Union's political causes but was terminated for failing to pay any agency fees. The evidence indicates that a constitutionally-permissible mode of payment did not exist. The plaintiff was not required to estimate, and then to pay, an agency fee reflecting an amount that the Union spends on non-political activities. The plaintiff had no way of estimating this amount and the law does not require the impossible.

### III.

We recognize that the basis of our decision differs from the district court's reasoning. The scope of the injunction, however, is reasonable under either view. We there-

fore affirm the district court's order granting the preliminary injunction.