THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN WHITMAN RAY, Defendant-Appellant.

First District (1st Division)   No. 81—1706

Opinion filed October 24, 1983.

David C. Thomas, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello and Louis F. Stalzer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, John Whitman Ray, appeals from his conviction for violating section 24 of the Medical Practice Act (Ill. Rev. Stat. 1979, ch.

111, par. 4459), which prohibits the practice of medicine without a license. After a jury trial, defendant was found guilty, placed on one year misdemeanor probation and fined $880. The sole issue on appeal is the constitutionality of section 24.

Defendant's conviction resulted from an undercover investigation by reporter Ann Little. Little posed as a patient and went to consult defendant at a motel in Countryside, Illinois, on December 7, 1979. Little testified that when she arrived at the motel she observed signs with defendant's name on them posted in the entranceways and corridors indicating the direction to defendant's room. Little testified that upon entering the room she noticed that there was a single bed and two large portable metal tables with wheels. There were about 10 people in the room. A woman was lying on one of the tables, and defendant was looking into her eyes with a lighted magnifying glass. Another woman was sitting down and a man was pressing her foot with his finger. Defendant told the man, "your brown-eyed wife will have blue eyes when her body is cleansed." The woman told Little that the pressure on her foot was for her pancreas. When Little asked the woman what was wrong with her, the woman replied, "I didn't know there was anything wrong until now."

Little was given two forms to complete. One form requested biographical information and the other stated that defendant did not diagnose or prescribe. Little also listened to a 10-minute tape recording about naturopathy or the natural healing of the body. When it was Little's turn, defendant asked her what problems she was having. Little stated that she had headaches and an upset stomach. Defendant felt her head and stated that the bones of her skull did not fit together properly. Defendant told her that she needed cranial manipulation which could occur only after her body was cleansed. Defendant then looked into Little's mouth and stated that the roof of her mouth was too low, which was a common cause of headaches. Defendant told her she would have therapy of the fingers, but not for nine months. Defendant looked into Little's eyes using the lighted magnifying glass. He started to list glands and organs of the body and named an herb for each. A woman assisting him took notes on a clip board.

Defendant next pinched Little's arms and she indicated where it hurt. Defendant told her she had poor circulation and degenerated nerves. Defendant then felt the back of her neck and told her she had several vertebrae out of alignment. Defendant told her she needed a back adjustment and began to twist her shoulder but she asked him to stop. After additional examination by defendant, Little was given a sheet of paper with the various herbs checked. Little paid $20 to the

woman assisting defendant.

On April 1, 1980, Little brought John Green, an investigator from the Department of Registration and Education, to see defendant at the same motel in Countryside, Illinois. They posed as husband and wife. When they entered the room, they observed 10 or 15 people were sitting or lying on the tables with another person at their head or foot applying pressure to their body with their fingers. They heard defendant tell one woman that she had diarticularitus and a degenerative nerve disease while looking into her eyes. The woman then asked if someone would apply pressure to her neck with their fingers. Defendant told another woman that she had carcinogenic growths. After looking into the woman's eyes, defendant told the people in the room that the woman was diabetic and should decrease her insulin by five units a day until she was completely off insulin. The State presented evidence that defendant was not licensed to practice medicine in Illinois.

Section 24 of the Medical Practice Act provides:

> "If any person holds himself out to the public as being engaged in the diagnosis or treatment of ailments of human beings; or suggests, recommends or prescribes any form of treatment for the palliation, relief or cure of any physical or mental ailment of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift, or compensation whatsoever; or diagnosticates or attempts to diagnosticate, operate upon, profess to heal, prescribe for, or otherwise treat any ailment, or supposed ailment, of another; or maintains an office for examination or treatment of persons afflicted, or alleged or supposed to be afflicted, by any ailment; or attaches the title Doctor, Physician, Surgeon, M.D., or any other word or abbreviation to his name, indicating that he is engaged in the treatment of human ailments as a business; and does not possess a valid license issued by the authority of this State to practice the treatment of human ailments in any manner, he shall be sentenced as provided in Section 35.1." Ill. Rev. Stat. 1979, ch. 111, par. 4459.

On appeal, defendant contends that section 24 is unconstitutional because of vagueness and overbreadth. Section 24 has been held to list five separate offenses. (*People v. Shokunbi* (1967), 89 Ill. App. 2d 53, 232 N.E.2d 226.) Defendant challenges two provisions: the second, which prohibits the prescription of any form of treatment with the intention of receiving compensation without a license and, the third, which prohibits attempts to diagnosticate or operate upon another without a license.

First, defendant contends that these prohibitory clauses attempt to regulate conduct in such vague, ambiguous and uncertain terms that due process is offended. Defendant argues that although the words of the statute, when taken alone, are not imprecise, when read as a whole they comprise such a broad ban on activity that the common person is unable to discern what the statute actually makes illegal. Because of this ambiguity, defendant argues that people of common intelligence are not given any discernable standard to which they can conform their conduct to avoid criminal prosecution.

Defendant has given a number of examples which he contends demonstrate that the statute is unconstitutionally vague. Defendant contends that advertisements promoting medicine are illegal under the statute. Defendant claims that the statute prohibits a parent from applying first aid to his child and prohibits an athletic trainer from taping up a player's injured knee or suggesting that the player take aspirin for pain. Defendant also contends that the statute prohibits someone who is not a licensed doctor from giving a paid lecture on the treatment of a medical ailment.

Defendant contends that this case is analogous to a series of cases in the United States Supreme Court which have held that statutes requiring State employees to take an oath of allegiance were unconstitutionally vague because the activities forsworn by the oaths were described in terms so vague and subject to so many innocent applications that people of common intelligence must guess at their meaning. *Cramp v. Board of Public Instruction* (1961), 368 U.S. 278, 7 L. Ed. 2d 285, 82 S. Ct. 275; *Baggett v. Bullitt* (1964), 377 U.S. 360, 12 L. Ed. 2d 377, 84 S. Ct. 1316.

Defendant has posed a number of hypotheticals allegedly showing the unconstitutionality of section 24. None of these hypotheticals, however, resemble the facts in defendant's case. It is established that a constitutional challenge to a statute's provisions will be considered only where a party is directly affected by the unconstitutional feature unless the unconstitutional feature is so pervasive as to render the entire act invalid. *People v. Vandiver* (1971), 51 Ill. 2d 525, 283 N.E.2d 681.

In *Vandiver* the supreme court refused to consider the contention that potential applications of a criminal statute to innocent conduct rendered the statute unconstitutionally vague. The court stated, "[w]e need not be concerned with the hypothetical situations posed by the defendant or the many other situations which may present questions as to the applicability of the statute. These borderline facts are not involved in this case." (51 Ill. 2d 525, 529, 283 N.E.2d 681, 683.) The court recognized that due process requires that a criminal statute give

adequate notice of what activity will subject one to criminal sanctions. The court held, however, that "the fact that there may be borderline cases wherein a degree of uncertainty exists as to the applicability of a statute does not render the statute unconstitutional as to conduct about which no uncertainty exists." 51 Ill. 2d 525, 530, 283 N.E.2d 681, 684.

■ Defendant's conduct falls within the evil the statute seeks to avoid. The evidence at trial showed that defendant, who was not licensed as a medical doctor, was diagnosing and treating people for diabetes, cancer, spinal defects and nerve diseases. Such activity could cause great bodily harm to the people involved. Defendant's conduct is clearly within the prescription of the statute and as applied to him the statute is not vague. As the *Vandiver* court stated, "[w]e will not *** conjecture as to the statute's application to situations less clear." 51 Ill. 2d 525, 530, 283 N.E.2d 681, 684.

The State's inherent police power gives it the right to enact reasonable legislation to secure the public's health and safety by licensing physicians. (*Rios v. Jones* (1976), 63 Ill. 2d 488, 348 N.E.2d 825.) The Medical Practice Act has been in effect since 1923. Since that time the supreme court has repeatedly affirmed the validity of section 24 and found that it does not violate due process. (*People v. Handzik* (1951), 410 Ill. 295, 305, 102 N.E.2d 340, 345, *cert. denied* (1952), 343 U.S. 927, 96 L. Ed. 1337, 72 S. Ct. 760.) "[T]his test of time, though not conclusive, diminishes the force of the contention that the statute is unconstitutionally vague." *People v. Vandiver* (1971), 51 Ill. 2d 525, 530, 283 N.E.2d 681, 684.

Moreover, defendant's contention that section 24 prohibits one from applying simple home remedies to minor ailments is not persuasive. In *People v. Zimmerman* (1945), 391 Ill. 621, 623, 63 N.E.2d 850, 851, the court considered a similar challenge to the constitutionality of this provision and concluded that when the provisions against the unlicensed practice of medicine are considered in light of the other sections of the act and the purposes sought to be accomplished by the enactment of the statute, defendant's contention is without merit. The court stated that the elements of the offense include:

"a holding out to the public as being engaged in the diagnosis or treatment of ailments of human beings, the suggesting, recommending or prescribing treatment for relief of ailments, all with the intention of receiving either directly or indirectly a fee or reward therefor. It is clear the act is not subject to the criticism directed against it." 391 Ill. 621, 623, 63 N.E.2d 850, 851.

Defendant further argues that this alleged ambiguity in the statute

has a chilling effect on free speech. When faced with the potential of criminal prosecution anyone advocating new or alternative methods of treating human illness will be dissuaded from discussing their methods publicly.

■ A statute is overly broad if it may reasonably be interpreted to prohibit conduct which is constitutionally protected. (*People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 209, 414 N.E.2d 731, 739.) Defendant concedes that section 24 does not explicitly regulate speech. Rather, he claims that the statute may be interpreted to prohibit speech. We find, however, that the statute when read as a whole is not reasonably subject to the interpretation that defendant suggests.

Section 24, by its terms, applies to those who "practice the treatment of human ailments." (Ill. Rev. Stat. 1981, ch. 111, par. 4459; *Zimmerman*.) The practice of medicine has been defined as follows:

> "To practice is to exercise a calling or profession. It is the application of science or knowledge to the wants of men in the recurring incidents of life ***. [Citation.] The practice of medicine includes the application of the knowledge of medicine, of disease and of the laws of health." (*People v. Blue Mountain Joe* (1889), 129 Ill. 370, 377, 21 N.E. 923, 925.)

The section, by its terms and as interpreted, applies to the practice of medicine in the treatment of ailments. When interpreted as a whole, section 24 does not regulate free speech. The hypothetical application of the statute suggested by defendant does not involve the practice of medicine in the treatment of ailments of a person. The State has a compelling interest in the regulation of the practice of medicine within its boundaries in order to protect the health, safety and welfare of its citizens. (*Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 792, 44 L. Ed. 2d 572, 588, 95 S. Ct. 2004, 2016.) Furthermore, even if the statute did infringe on rights of expression, section 24 is reasonably drawn to meet the State's compelling interest in regulation of the practice of medicine. It has been held that a facial challenge for overbreadth will fail when the enactment at issue does not reach a substantial amount of constitutionally protected conduct. (*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 71 L. Ed. 2d 362, 102 S. Ct. 1186.) In light of these considerations we determine that section 24 is not overly broad.

For the foregoing reasons, we find that section 24 is constitutionally valid and affirm defendant's conviction thereunder.

Affirmed.

McGLOON and GOLDBERG, JJ., concur.