THE ILLINOIS MUNICIPAL LEAGUE, Plaintiff-Appellant, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Defendants-Appellees (The Village of Hanover Park *et al.*, Plaintiffs).

Fourth District   No. 4—85—0179

Opinion filed January 21, 1986.

GREEN, J., specially concurring.

Thomas W. Kelty and Stanley L. Morris, both of Pfeifer & Kelty, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This action arises from a seven-count complaint for declaratory and injunctive relief seeking to set aside the Illinois Public Labor Relations Act (Act), Public Act 83—1012, effective July 1, 1984, raising various claims concerning the alleged invalidity thereof. (See Ill. Rev.

Stat., 1984 Supp., ch. 48, par. 1601 *et seq.*) By order of February 1985, the circuit court of Sangamon County dismissed the complaint with prejudice, having found that plaintiffs lacked standing to bring the matters asserted in counts I and V; that counts II, III, IV, and VI were not ripe for adjudication; and count VII, incorporating the allegations of the other counts and requesting injunctive and declaratory relief, was also dismissed by the court's order which dismissed the complaint in its entirety. The Illinois Municipal League has appealed from the judgment of the circuit court of Sangamon County. We affirm.

Count I alleged that (1) the League is an unincorporated, non-profit, nonpolitical association of Illinois cities, villages, and incorporated towns, legally able to sue on behalf of member municipalities, the interests of which constitute protectable interests falling within the operative language of the Act and which would be adversely affected by the Act's enforcement; (2) section 3(g) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1603(g)) requires payment of moneys by municipal employees or, on their behalf by municipalities, for purposes which violate the first and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, XIV) and article I, sections 2 and 4, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, secs. 2, 4) in that it denies employees freedom of association and deprives them of property without due process by forcing them to make payments for which they receive no value or compensation while providing them no means to object thereto; and (3) because of section 3(g), the Act is illegal, invalid, unconstitutional, and unenforceable.

Count II alleged that (1) section 17 of the Act permits employees charged with the protection of public health, safety, and welfare of the State's citizens to strike their employers (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1617(a)); and (2) the Act thereby encourages municipal employees to abandon their statutory and constitutional duties, resulting in a *per se* violation of article XI, section 2, of the Illinois Constitution (Ill. Const. 1970, art. XI, sec. 2).

Count III of the complaint alleged that (1) the citizens of the State, through the General Assembly, have established a public policy that prohibits public employees from striking, which policy created a right in the citizens, protected by article I, section 24, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 24 ("[t]he enumeration in this Constitution of certain rights shall not be construed to deny or disparage others retained by the individual citizens of the State")); (2) passage of the Act, with its strike provision, violates those rights historically granted to this State's citizens and protected by this constitutional provision; and (3) the Act is therefore rendered unconstitutional, void,

and unenforceable.

Count IV of the complaint alleged that (1) Governor Thompson, a defendant, was permitted amendatory veto power pursuant to article IV, section 9(e), of the Illinois Constitution (Ill. Const. 1970, art. IV, sec. 9(e)); (2) the supreme court has interpreted this section as prohibiting the Governor from changing the fundamental purpose of legislation and making substantial or expansive changes therein (*People ex rel. City of Canton v. Crouch* (1980), 79 Ill. 2d 356, 403 N.E.2d 242; *Continental Illinois National Bank & Trust co. v. Zagel* (1979), 78 Ill. 2d 387, 401 N.E.2d 491); (3) the amendatory veto message to the legislation which was the basis of the Act violated section 9(e) by adding a section to the bill dealing with collective bargaining rights for employees of the Bi-State Development Agency and deleting reference to educational employees and employers from the bill; and (4) the Act is rendered unconstitutional as a result of this violation of the Illinois Constitution.

Count V alleged that (1) section 17 of the Act permits all employees, other than security employees, the right to strike, thereby conferring upon those persons involved with prison populations a "special benefit," which is denied to others who "may be similarly situated"; (2) there is no compelling State interest in this distinction; (3) the strike provision of the Act therefore constitutes "invalid special legislation and denies equal protection of the safety laws of this State"; (4) the strike provision of the Act violates article IV, section 13, and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. IV, sec. 13; art. I, sec. 2), and the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV).

Count VI alleged that (1) the Act imposed on members of the League a personnel mandate, as defined by section 3(h) of the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, par. 2203(h)); (2) while the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1623) purports to exempt its provisions from the State Mandates Act, it does not state the specific reasons for such exclusion as is required under section 6(f) of the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, par. 2206(f)); and (3) that the failure of the Act to comply with the requirements of the State Mandates Act relieves the League and its members from the obligation of implementing the personnel mandate imposed by the Act.

We first consider the propriety of the circuit court's ruling that the League lacked standing to bring the claims asserted in counts I and V. The League relies on two cases: *Warth v. Seldin* (1975), 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197, referred to by the trial court in its memorandum opinion, and *Weihl v. Dixon* (1977), 56 Ill. App. 3d 251,

371 N.E.2d 881.

■ *Warth* viewed the question of standing as whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. *Warth* determined that the inquiry involved both (1) constitutional limitations on Federal court jurisdiction, and (2) prudential limitations on its exercise. (*Warth v. Seldin* (1975), 422 U.S. 490, 498, 45 L. Ed. 2d 343, 354, 95 S. Ct. 2197, 2205.) In its constitutional dimension, standing imports justiciability; *i.e.*, whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of article III of the United States Constitution (U.S. Const., art. III). Thus:

> "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. [Citations.] The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action. \*\*\*' [Citations.]" (*Warth v. Seldin* (1975), 422 U.S. 490, 498-99, 45 L. Ed. 2d 343, 354-55, 95 S. Ct. 2197, 2205.)

Apart from this minimum constitutional mandate, there are other limits on the class of persons who may invoke the Federal courts' decisional and remedial powers: (1) when the asserted harm is a "generalized grievance" shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant the exercise of jurisdiction; and (2) the plaintiff must generally assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of others. (*Warth v. Seldin* (1975), 422 U.S. 490, 498, 45 L. Ed. 2d 343, 355, 95 S. Ct. 2197, 2205.) As to associations, *Warth* held that the possibility of representational standing, absent injury to the association itself, does not eliminate or attenuate the constitutional requirement of case or controversy. Therefore, the association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. (422 U.S. 490, 510-11, 45 L. Ed. 2d 343, 361-62, 95 S. Ct. 2197, 2211.) The court further stated that, apart from the case-or-controversy requirement of article III, prudential considerations for standing strongly counseled against according the association standing

to prosecute the action, as such was an attempt to raise "putative rights" of third parties; and none of the exceptions permitting such claims were present. 422 U.S. 490, 514, 45 L. Ed. 2d 343, 363-64, 95 S. Ct. 2197, 2213.

*Weihl v. Dixon* (1977), 56 Ill. App. 3d 251, 253-55, 371 N.E.2d 881, 883-84, discussed Illinois law on standing:

> "As stated by the court in *Lynch v. Devine*, 45 Ill. App. 3d 743, 747-48, 359 N.E.2d 1137, 1140:
>
>> 'The doctrine of standing, simply stated, requires that a party seeking relief from the courts must allege some injury in fact to some substantive, legally-protected interest of his, which is a right or interest either recognized by common law or created by statute. (See 59 Am. Jur. 2d *Parties* secs. 26-29 (1971).) The doctrine is used to insure that the courts are available to decide actual, specific controversies between the parties and are not overwhelmed in the mire of abstract questions, moot issues, or cases brought on behalf of other parties who do not desire judicial aid. *Flast v. Cohen* (1968), 392 U.S. 83, 99-100, 20 L. Ed. 2d 947, 961-62, 88 S. CT. 1942.' See also *Fuchs v. Bidwell*, 65 Ill. 2d 503, 359 N.E.2d 158.
>
> Article 6, section 9 of the Illinois Constitution of 1970 states in part: 'Circuit Courts shall have original jurisdiction of all justiciable matters ***.' Standing is an aspect of justiciability in which the primary focus is upon *the personal stake* in the outcome of the controversy of the person seeking the adjudication of a particular issue. (*Flast v. Cohen.*) The person seeking to invoke the jurisdiction of the court must have some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. (59 Am. Jur. 2d *Parties* sec. 26 (1971).) A sufficient interest in the actual controversy is equally a prerequisite for a person to maintain an action for a declaratory judgment (Ill. Rev. Stat. 1975, ch. 110, par. 57.1), and where such an interest is lacking, the plaintiff does not have standing to bring the action (*Clark Oil & Refining Corp. v. City of Evanston*, 23 Ill. 2d 48, 177 N.E.2d 191).
>
> *** Moreover, that the instant action involves questions directly affecting the interests of the plaintiff's [an attorney] clients can give him no more right, title or interest in the subject matter of the controversy than a physician would have to the body of his patient. *** It is they whose rights were allegedly infringed and thus it is they who must seek redress. Plaintiff may not invoke a remedy on behalf of others who do not seek or

desire it. Consequently we find plaintiff lacks standing to bring the instant action." (Emphasis added.)

Generally, one who would attack a statute as unconstitutional must bring himself within the class as to whom the law is allegedly constitutionally objectionable. (*People v. Zuniga* (1964), 31 Ill. 2d 429, 430-31, 202 N.E.2d 31, 32; *Schreiber v. County Board of School Trustees* (1964), 31 Ill. 2d 121, 198 N.E.2d 848; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 407-08, 118 N.E.2d 295, 304; *Jaffe v. Cruttenden* (1952), 412 Ill. 606, 613, 107 N.E.2d 715, 720; *City of Elmhurst v. Buettgen* (1946), 394 Ill. 248, 254, 68 N.E.2d 278, 282; *Tileston v. Ullman* (1943), 318 U.S. 44, 87 L. Ed. 603, 63 S. Ct. 493.) A court will consider the validity of a statutory provision only at the instance of one who is directly affected by it (*People v. Diekmann* (1918), 285 Ill. 97, 101, 120 N.E. 490, 491; *People v. McBride* (1908), 234 Ill. 146, 166, 84 N.E. 865, 868; *Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 118 N.E.2d 295), unless the unconstitutional feature is so pervasive as to render the entire act invalid. It is therefore "pertinent to inquire who is and who is not complaining." (*People v. Reiner* (1955), 6 Ill. 2d 337, 341, 129 N.E.2d 159, 161; accord, *People v. Munziato* (1962), 24 Ill. 2d 432, 435, 182 N.E.2d 199, 201; *People v. Wagner* (1982), 89 Ill. 2d 308, 311, 433 N.E.2d 267, 269; *Commonwealth Edison Co. v. Community Unit School District No. 200* (1976), 44 Ill. App. 3d 665, 668-69, 358 N.E.2d 688, 690, and cases cited therein; *People v. Mayberry* (1976), 63 Ill. 2d 1, 6, 345 N.E.2d 97, 100, *cert. denied* (1976), 429 U.S. 828, 50 L. Ed. 2d 92, 97 S. Ct. 87; *Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 510-11, 349 N.E.2d 61, 67; *People v. Ray* (1983), 119 Ill. App. 3d 180, 183-84, 456 N.E.2d 179, 182.) Courts do not rule on the constitutionality of a statute where the complaining party is only theoretically affected by the alleged invalidity of the provision, and decide constitutional questions only to the extent required by the issues in the case. *Harris-Intertype Corp. v. Donley Bindery Co.* (1975), 26 Ill. App. 3d 140, 144-45, 324 N.E.2d 668, 672.

An exception to the general rules of standing is made in first amendment cases. (*People v. Holder* (1983), 96 Ill. 2d 444, 449, 451 N.E.2d 831, 833, *cert. denied* (1984), 467 U.S. 1241, 82 L. Ed. 2d 820, 104 S. Ct. 3511.) As *Holder* observed, however, *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 615, 37 L. Ed. 2d 830, 842, 93 S. Ct. 2908, 2917-18, determined that particularly where conduct, and not merely speech, is involved, the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. (*People v. Holder* (1983), 96 Ill. 2d 444, 450, 451 N.E.2d 831, 834.) Referring to *Broadrick's* statement that a statute would be

declared overbroad on its face only when the flaw is a substantial concern in the context of the statute as a whole, *Holder* determined that the flaw in the Illinois statutory provision was not a "substantial concern" when viewed in the context of the legitimate sweep of an intimidation statute.

■ Freedom of association is not necessarily infringed by "fair share agreements." The Act provides protection both for public employees interested in associating themselves for the purposes of collective bargaining or improved working conditions, and for those employees who wish to refrain therefrom. (See Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1606(a), 1610(a)(1) (employer unfair labor practice), 1610(b)(1) (labor organization unfair labor practice).) Further, section 6 of the Act, which employs the term "fair share agreement," rather than the definitional section of the Act, section 3(g), does not appear to require such agreements; rather, inclusion of "fair share agreements" in collective bargaining contracts negotiated to cover public employees within the terms of the Act is *permitted.* (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1606(e), (g).) This attenuates any unconstitutionality problem based upon the "substantial overbreadth" test.

■ Moreover, counts I and V allege injury to employees and not to plaintiff; and, under Illinois law, an association does not have standing to maintain an action in its representational capacity absent a showing that it has a recognizable interest in the dispute peculiar to itself and capable of being affected. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 377, 362 N.E.2d 298, 301; *Retail Liquor Dealers Protective Association v. Schreiber* (1943), 382 Ill. 454, 47 N.E.2d 462.) The plaintiff in *Underground* urged the Illinois Supreme Court to adopt and apply the Federal court's position, allowing association standing, in limited situations, to maintain suits solely for the benefit of its members. *Underground* found it unnecessary to address the merits underlying the Federal rule since, applying *Warth v. Seldin* (1975), 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197, plaintiff Underground's complaint was insufficient to support standing even under the Federal rule.

The Federal rule is that an association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 379, 362 N.E.2d 298, 302.) The possibility of such representational standing does not eliminate or attenuate the constitutional requirement of case or controversy. In *Warth v. Seldin* (1975), 422 U.S. 490,

45 L. Ed. 2d 343, 95 S. Ct. 2197, the court referred to an association's standing to seek prospective relief for its members, and held it did not have standing because the complaint failed to allege facts sufficient to make a case or controversy had the members themselves brought the action. The complaint referred to no specific project of any of its members that was precluded either by the ordinance challenged as unconstitutional or by the city's action in enforcing it. There was no averment that any member had applied to the city for a building permit or a variance with respect to any current project; neither was there any indication that the city had delayed or thwarted any project proposed by the association's members. *Warth* concluded that the association had failed to show the existence of any injury to its members of sufficient immediacy and ripeness to warrant judicial intervention. *Underground* found the plaintiff's complaint evidenced many of the same deficiencies found in *Warth*. *Glen Ellyn Savings & Loan Association v. Tsoumas* (1976), 41 Ill. App. 3d 292, 296, 354 N.E.2d 53, 56.

The standing of associations in Federal courts was discussed in *Simon v. Eastern Kentucky Welfare Rights Organization* (1976), 426 U.S. 26, 39-40, 48 L. Ed. 2d 450, 461-62, 96 S. Ct. 1917, 1925:

> "We note at the outset that the five respondent organizations, which described themselves as dedicated to promoting access of the poor to health services, could not establish their standing simply on the basis of that goal. Our decisions make clear that an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the *concrete injury* required by Art. III. [Citations.] Insofar as these organizations seek standing based on their special interest in the health problems of the poor their complaint must fail. *Since they allege no injury to themselves as organizations, and indeed could not in the context of this suit, they can establish standing only as representatives of those of their members who have been injured in fact, and thus could have brought suit in their own right.* [Citation.] The standing question in this suit therefore turns upon whether any individual respondent has established an actual injury, or whether the respondent organizations have established actual injury to any of their indigent members." (Emphasis added.)

*Simon v. Eastern Kentucky Welfare Rights Organization* (1976), 426 U.S. 26, 48 L. Ed. 450, 96 S. Ct. 1917, found it speculative whether the desired exercise of the court's remedial powers in the suit would result in the availability to respondent of the services sought; and stated:

"The principle of [*Linda R.S. v. Richard D.* (1973), 410 U.S. 614, 35 L. Ed. 2d 536, 93 S. Ct. 1146] and *Warth* controls this case. As stated in *Warth*, that principle is that indirectness of injury, while not necessarily fatal to standing, 'may make it substantially more difficult to meet the minimum requirement of Art. III: to establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm.' 422 U.S., at 505. Respondents have failed to carry this burden. Speculative inferences are necessary to connect their injury to the challenged actions of petitioners. Moreover, the complaint suggests no substantial likelihood that victory in this suit would result in respondents' receiving the hospital treatment they desire. A federal court, properly cognizant of the Art. III limitation upon its jurisdiction, must require more than respondents have shown before proceeding to the merits." (426 U.S. 26, 44-46, 48 L. Ed. 2d 450, 464-65, 96 S. Ct. 1917, 1927-28.)

Thus, even under the view of standing for associations applied by Federal courts, the League does not have standing.

■ Counts I and V of the complaint allege that the rights of *public employees* will be affected, rather than those of plaintiffs. Applying the above principles, the League did not properly frame and present sufficient facts to warrant standing on the constitutional challenges raised. The League nevertheless maintains that a party may, in certain circumstances, assert the rights of others when it would be difficult, if not impossible, for the persons whose rights are asserted to present their grievance before any court. The League cites three cases: *Friendship Medical Center, Ltd. v. Chicago Board of Health* (7th Cir. 1974), 505 F.2d 1141, *cert. denied* (1975), 420 U.S. 997, 43 L. Ed. 2d 680, 95 S. Ct. 1438, *NAACP v. Alabama ex rel. Patterson* (1958), 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163, and *Singleton v. Wulff* (1976), 428 U.S. 106, 49 L. Ed. 2d 826, 96 S. Ct. 2868. These cases do not require reversing the trial court.

In *Friendship Medical Center, Ltd. v. Chicago Board of Health* (7th Cir. 1974), 505 F.2d 1141, *cert. denied* (1975), 420 U.S. 997, 43 L. Ed. 2d 680, 95 S. Ct. 1438, the Seventh Circuit Court of Appeals reversed the dismissal of an action by a medical corporation and a physician, who owned and operated an abortion clinic, seeking an injunction against enforcement and declaration of unconstitutionality of abortion service regulations promulgated by the Chicago Board of Health. The Seventh Circuit found the plaintiffs had standing to claim the abortion regulations unduly infringed upon the privacy rights of *their patients*;

and further, that the abortion regulations could not stand, in view of (1) women's fundamental right to privacy, and (2) the equal protection clause. The Seventh Circuit found plaintiffs had standing—given that the challenged regulations were aimed at and operated directly on the plaintiffs and were of a continuing nature with potentially very real criminal consequences sufficient to allow plaintiffs to assert the rights of their patients. (505 F.2d 1141, 1147.) In addition, the Court of Appeals regarded the patient's right to an abortion during the first trimester as fundamental, and stated it would be a wholly undesirable situation for a physician to be placed in a position of guessing, at the risk of criminal liability, whether he could honor and give effect to that right. (505 F.2d 1141, 1148.) We note that there is no criminal liability for the claims alleged in counts I and V.

In *Singleton v. Wulff* (1976), 428 U.S. 106, 49 L. Ed. 2d 826, 96 S. Ct. 2868, the respondents, two Missouri licensed physicians, brought an action for injunctive relief and a declaration of the unconstitutionality of a Missouri statute which excluded abortions that were not "medically indicated" from the purposes for which Medicaid benefits were available to needy persons. The Court of Appeals had accorded the doctors standing to assert (and granted relief based partly upon) the rights of their patients. The Supreme Court thus had to decide whether the assertion of *jus tertii* was a proper one:

"Like any general rule, however, this one should not be applied where its underlying justifications are absent. With this in mind, the Court has looked primarily to two factual elements to determine whether the rule should apply in a particular case. The first is the relationship of the litigant to the person whose right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit. Furthermore, the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter. \*\*\*

The other factual element to which the Court has looked is the ability of the third party to assert his own right. Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply. If there is some genuine obstacle to such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who

is in court becomes by default the right's best available proponent. Thus, in *NAACP v. Alabama*, 357 U.S. 449, 2L. Ed. 2d 1488, 78 S. Ct. 1163, (1958), the Court held that the National Association for the Advancement of Colored People, in resisting a court order that it divulge the names of its members, could assert the First and Fourteenth Amendments rights of those members to remain anonymous. The Court reasoned that '[t]o require that [the right] be claimed by the members themselves would result in nullification of the right at the very moment of its assertion." (*Singleton v. Wulff* (1976), 428 U.S. 106, 114-16, 49 L. Ed. 2d 826, 833-34, 96 S. Ct. 2868, 2874-75.)

Defendants argue that the relationship between the League and its members and public employees is not such that the League is necessarily fully, or very nearly, as effective a proponent of employees' rights as employees would be. A given municipality is unlikely to have a homogeneous group of employees, insofar as their interests in rights afforded by the Act are concerned. As to the other factual element referred to in *Singleton*, the ability of the third party to assert his own rights, public employees have both a right and a forum for asserting their rights. (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1610(b)(1), 1611.) This case differs from *NAACP v. Alabama ex rel. Patterson* (1958), 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163, as there is no comparable reason that public employees could not themselves raise concrete objections to the application of the Act. There is an inherent recognition in the Act that the interests of public employees and their public employers regarding wages, working conditions, and such matters are potentially adverse. Employees and employers may proceed from contrary and, to an extent, antagonistic viewpoints and concepts of self-interest. (See *Metropolitan Edison Co. v. NLRB* (1983), 460 U.S. 693, 75 L. Ed. 2d 387, 103 S. Ct. 1467.) Despite the League's argument to the contrary, public employees do in fact bring suits on their own behalf. See, *e.g., Ellis v. Brotherhood of Ry. Clerks* (1984), 466 U.S. 435, 80 L. Ed. 2d 428, 104 S. Ct. 1883; *Abood v. Detroit Board of Education* (1977), 431 U.S. 209, 212-13, 52 L. Ed. 2d 261, 270, 97 S. Ct. 1782, 1788; *Seay v. McDonnell Douglas Corp.* (9th Cir. 1976), 533 F.2d 1126, 1128; *Robbinsdale Education Association v. Robbinsdale Federation of Teachers Local 872* (1976), 307 Minn. 96, 239 N.W.2d 437, *vac. & rem.* (1976), 429 U.S. 880, 50 L. Ed. 2d 160, 97 S. Ct. 225; *Perry v. Lodge No. 2569 of the International Association of Machinists* (7th Cir. 1983), 708 F.2d 1258, 1259; *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908.

■ We conclude the trial court ruled correctly. The possibility of a

future actual controversy is too remote to support standing to bring suit. Neither counts I nor V allege injuries to the League or its members, but only to *employees*. Neither count alleges specific facts to show a concrete, specific injury to employees, but only that the Act may violate employees' constitutionally protected rights. The League itself is not subject to the Act, and so cannot be harmed by its enforcement.

■ We next consider whether the trial court erred in determining that the matters asserted in counts II, III, IV, and VI of plaintiff's complaint are not ripe for adjudication. As the League's brief contains no argument on the ripeness of count IV of the complaint, alleging that the Governor's amendatory veto violated article V, section 9(e) of the 1970 Illinois Constitution, we conclude its argument has been abandoned.

As noted in *Warth v. Seldin* (1975), 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197, standing bears close affinity to ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention—as well as mootness—whether the occasion for judicial intervention persists. (422 U.S. 490, 499 n.10, 45 L. Ed. 2d 343, 355 n.10, 95 S. Ct. 2197, 2205 n.10.) The ripeness doctrine has been defined as:

> "The constitutional mandate of case or controversy, U.S. Const. Art. III, requires an appellate court to consider whether a case has matured or ripened into a controversy worthy of adjudication before it will determine the same.
>
> The question in each case is whether there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment. *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 92 S. Ct. 1749, 32 L. Ed. 2d 257." (Emphasis added.) (Black's Law Dictionary 1192 (5th ed. 1979).)

The League cites two cases to support its ripeness claim: *United Public Workers v. Mitchell* (1947), 330 U.S. 75, 91 L. Ed. 754, 67 S. Ct. 556, and *Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 390 N.E.2d 428.

■ In *Mitchell*, the United States Supreme Court reviewed a case wherein the plaintiff sought declaratory and injunctive relief against members of the United States Civil Service Commission to prevent the enforcement of a provision of the "Hatch Act" prohibiting Federal employees from actively participating in political campaigns. Only one of the plaintiffs had actually been charged with violating that act. As to the plaintiffs who had no been so charged, the court found the issue not ripe for adjudication. The rationale for the doctrine of ripeness

stated in *Mitchell* is fundamentally tied to the concept of "actual controversy." *International Longshoremen's & Warehousemen's Union, Local 37 v. Boyd* (1954), 347 U.S. 222, 223-24, 98 L. Ed. 650, 652, 74 S. Ct. 447, 448, stated:

> "Appellants in effect asked the District Court to rule that a statute the sanctions of which had not been set in motion against individuals on whose behalf relief was sought, because an occasion for doing so had not arisen, would not be applied to them if in the future such a contingency should arise. That is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function."

Under Illinois law, there must be an "actual controversy" to bring an action for declaratory relief. "Actual" does not mean that a wrong must have been committed and injury inflicted. "Actual" does require a showing that the underlying facts and issues of the case are not moot or premature; there must be a concrete dispute which admits of an immediate and definitive determination of the parties' rights. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375, 362 N.E.2d 298, 300.) The party must at least be able to show that he has sustained, or is in immediate danger of sustaining, a direct injury as a result of the enforcement of the challenged statute.

The "actual controversy" element was discussed in *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 451-52, 389 N.E.2d 529, 531-32. In that case, the plaintiff alleged *it* owned animals within the scope, meaning, intent and application of the challenged statute. As such ownership raised the threat of potential criminal prosecution, it was sufficient to entitle plaintiff to bring a declaratory judgment action challenging the constitutionality of the statute. The League is not in a comparable position.

In *Barco Manufacturing Co. v. Wright* (1956), 10 Ill. 2d 157, 139 N.E.2d 227, the Illinois Supreme Court rejected the plaintiffs' complaint to enjoin disbursement of public funds. In that case, petitioners alleged they were employers in the State subject to assessment for voluntary contributions to the unemployment compensation fund, and sought to enjoin disbursement of public funds. The court found they failed to show a special injury giving them a right to sue. They merely alleged that such payments would adversely affect the State experi-

ence factor and ultimately result in a higher tax rate upon them; and the possibility of such result was extremely uncertain and remote, being only the bare possibility of future injury, not cognizable in equity: "It is a fundamental principle of equity that to entitle one to permanent injunctive relief he must establish actual and substantial injury and not merely technical, inconsequential, or speculative damage; and that such relief will not be granted to allay unfounded fears or misapprehensions." 10 Ill. 2d 157, 166, 139 N.E.2d 227, 232.

To the same effect is *Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 750, 359 N.E.2d 1137, 1142, wherever plaintiff alleged he was a contractor and sought to enjoin (State) defendants from letting certain types of highway construction contracts which were not in compliance with certain provisions of the Prevailing Wage Act. The reviewing court interpreted the purpose of the statute to mean that payments of the prevailing wage tends to lessen the possibility of strikes and increases the quality of the workers; but there were no allegations in the complaint that defendants' conduct had, in fact, raised the possibility of a strike or resulted in poor quality work, or that there was any other injury or immediate danger to a substantial public interest.

In *Clyde Savings & Loan Association v. May Department Stores* (1981), 100 Ill. App. 3d 189, 192, 426 N.E.2d 955, 958, the court looked to the statute specifying that the circuit court shall refuse entry of a declaratory judgment unless it will result in the termination of "the controversy or some part thereof" as emphasizing the fact that the declaratory judgment procedure is not intended to permit litigation of moot *or* hypothetical cases. (Ill. Rev. Stat. 1979, ch. 110, par. 57.1.) The court found the action therein was moot.

■■ Applying the above principles, plaintiffs do not present claims which are ripe in counts II, III, or VI. With respect to count II, pertaining to strikes by public employees which may affect the public health, defendants point out that section 18 of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1618) provides a mechanism for enjoining such strikes. With respect to count III, alleging that article I, section 24, of the 1970 Illinois Constitution somehow has guaranteed as the "established public policy of this state to prohibit public employees from striking," the League advances no substantial argument. It appears that the legislature has the authority to enact a provision permitting for the right to strike for public employees and exempting certain categories. As to count VI, the League argues that municipalities will face increased costs, and that such possibility creates an actual controversy. We disagree that this makes the controversy ripe for determination.

■■ Dismissal with prejudice should not be made unless it clearly

appears that no set of facts could be established which would entitle plaintiff to relief. (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305, 312 N.E.2d 259, 262; *Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 361 N.E.2d 575.) In seeking a declaratory judgment, a preliminary injunction, or a permanent injunction, the plaintiff is required to specify all facts necessary to justify the unusual relief sought. Such facts must be alleged with certainty and precision; it is incumbent upon the plaintiff to allege, as well, in particular terms the irreparable harm. Mere conclusions are inadequate. (*People ex rel. Fahner v. Steel Container Corp.* (1981), 102 Ill. App. 3d 369, 371, 430 N.E.2d 68, 71; *Glen Ellyn Savings & Loan Association v. Tsoumas* (1976), 41 Ill. App. 3d 292, 294-95, 354 N.E.2d 53, 55.) Finally, as this court stated in *St. Joseph Data Service, Inc. v. Thomas Jefferson Life Insurance Co.* (1979), 73 Ill. App. 3d 935, 939, 393 N.E.2d 611, 615, it is the burden of the plaintiff to persuade the trial judge to include a specification that dismissal is without prejudice if he wishes to plead over. It appears that the League rested upon the complaint as framed and ruled upon. As such, if any count does not state the facts sufficient to show standing and ripeness, and make some showing to warrant relief, a dismissal should be upheld as to that count. No error. Our holding does not, however, preclude suit in a proper case.

▉ As the merits of the counts of the complaint have not been passed upon by the trial court, as a reviewing court we will not consider the constitutional issues raised. *Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 527, 449 N.E.2d 69, 74; *Runyan v. Williams* (1925), 315 Ill. 628, 630, 146 N.E. 497; *People v. Williams* (1977), 66 Ill. 2d 179, 189, 361 N.E.2d 1110, 1115; *People v. Hale* (1964), 31 Ill. 2d 200, 202, 201 N.E.2d 454, 455; *American National Bank & Trust Co. v. Colby* (1974), 19 Ill. App. 3d 1051, 1054, 313 N.E.2d 305, 307.

Accordingly, for the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

TRAPP, J., concurs.

JUSTICE GREEN, specially concurring:
I concur in the decision to affirm the judgment of the circuit court dismissing the complaint and agree with most of what is stated in the comprehensive opinion of the majority.

As stated by the majority, the inherent and at least partially adversarial relationship between employers and employees prevents the League or any of its member units from being appropriate entities to seek to uphold claimed rights of employees. I agree that plaintiffs lacked standing to bring counts I and V.

The opinion well documents the reluctance of Illinois courts to find the existence of an actual controversy until litigation is almost at hand. I agree that injunction provisions of section 18 of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1618) justifies the conclusion that count III does not present a ripe claim. I also agree that under the decision in *Barco Manufacturing Co. v. Wright* (1956), 10 Ill. 2d 157, 139 N.E.2d 227, any claim made by count VI is subject to the same infirmity.

Count III, however, purports to allege the existence of a constitutional prohibition against strikes by governmental employees. I agree with the implication of the majority that clearly no such prohibition exists. The majority apparently considers this lack of merit in the count as the chief reason why an actual controversy is not presented by the count. I do not agree that the lack of merit in the count is of substantial relevance to whether the dispute is ripe. If the issue set forth in the count is not ripe, it would, apparently, become ripe only when a particular strike by municipal employees is actually threatened. I am reluctant to pass on the question of whether this is so if we do not have to.

I recognize that we should ordinarily (1) avoid passing on a constitutional question when a case can be decided on other grounds; and (2) not pass on an issue of substance without resolving the question of whether the issue is ripe. Nevertheless, I would do so here because the lack of merit in count III is so clear and the question of ripeness so complicated. Even though the trial court did not pass on the merits of the allegations of count III, I would justify the trial court's dismissal of that count on the basis that the constitutional prohibition claimed does not exist.